**HARRIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 48, Appellant,**

**v.**

**Edna Jean MITCHELL as Independent Executor of the Estate of Ray Mitchell, Deceased, and Trustee for the Beneficiaries of Ray Mitchell, Trustee, Appellee.**

No. 01–94–00712–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 16, 1995.

Rehearing Overruled Dec. 7, 1995.

---

Andrew P. Johnson, 3rd, Ross J. Radcliffe, Houston, for Appellant.

Charles E. Fitch, S. Bradley Todes, Houston, for Appellee.

Before WILSON, HEDGES and TAFT, JJ.

## OPINION

TAFT, Justice.

This is an appeal from a judgment awarding contract damages arising out of a loan. Appellee, Edna Jean Mitchell, is the independent executor of the estate of Ray Mitchell, deceased, and trustee for the beneficiaries of Ray Mitchell, trustee. Mitchell sued appellant, Harris County Municipal Utility District No. 48 (the District), over a financial agreement between the District and Mitchell's predecessor in interest, Killarney Oaks, Inc. The trial court rendered judgment in favor of Mitchell for the principal amount of $120,000, $29,986.41 in attorney's fees, prejudgment interest at 9½ per cent annually, and post-judgment interest.

The District brings 25 points of error on appeal. The primary issue we are called upon to decide is whether the Texas Water Commission (the Commission) had primary jurisdiction over the determination of the interest rate on a loan from the developer, Killarney Oaks, Inc., to the District for the provision of water and sewer facilities. We will modify the trial court's judgment and, as modified, affirm.

## Background

Harris County Municipal Utility District No. 48 was created in 1972 to provide water and sewage treatment to the Cashel Oaks subdivision, which was developed by Killarney Oaks, Inc. The District and Killarney Oaks signed a financial agreement on July 28, 1978, under which Killarney Oaks loaned the District $120,000 so the District could provide services to the subdivision. The agreement provided that the District would "pay interest on such funds as advanced at a rate of 9½% or such lower rate as may be determined by regulatory authorities, compounded annually, until all principal and interest are paid in full." The loan was to be repaid "at the time (or before) the number of completed homes plus those on which construction has commenced totals 100 units...."

On March 26, 1992, Mitchell, as successor to Killarney Oaks, filed suit against the District to collect on the loan.[1] When the District received notice in May 1992 that construction was commencing on the 100th unit, the District filed a bond application with the Commission on June 2, 1992 to request approval to sell bonds to repay Killarney Oaks, or its successor in interest, the monies owed under the financial agreement. On September 28, 1992, the trial court abated the suit to await the Commission's ruling on the District's bond application. On January

---

1. Although the District as an agency of the State is entitled to governmental immunity, the District's immunity from suit has been waived by the legislature and the District's immunity from liability has been waived because this is a breach-of-contract suit. TEX.WATER CODE ANN. § 54.119 (Vernon 1992) (municipal utility districts are governmental agencies and may sue or be sued); *Missouri Pac. R.R. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 814 (Tex.1970) (statutory "sue or be sued" clause waives State's immunity from suit); *Fristoe v. Blum,* 92 Tex. 76, 45 S.W. 998, 999 (1898); *Alcorn v. Vaksman,* 877 S.W.2d 390, 403 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (en banc); *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 592 (Tex.App.—Austin 1991, writ denied) (State waives immunity from liability when it contracts).

20, 1993, the Commission approved a bond sale that included payment of $39,096 in interest to Killarney Oaks or its successor in interest.[2] After a bench trial on May 11 and 12, 1993, the trial court signed a judgment in Mitchell's favor on April 13, 1994, enforcing the higher interest rate of 9½ percent.[3] On June 6, 1994, the trial court filed findings of fact and conclusions of law in which the trial court concluded, *inter alia*, "There has been no lower rate of interest set by regulatory authorities, as that term is used in the Financial Agreement."

## Mitchell's Standing to Sue

In point of error 25, the District claims the trial court erred in rendering judgment for Mitchell because Mitchell is not a proper party to the suit. We interpret this point as an attack on the legal sufficiency of the evidence regarding Mitchell's standing to sue. In deciding a legal sufficiency point, we must consider only the evidence and inferences tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). *See generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence"*, 69 Tex.L.Rev. 515 (1991). A trial court's findings of fact are reviewable for legal sufficiency of the evidence by the same standards as are applied to reviewing the legal sufficiency of the evidence supporting a jury's finding. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991).

Mitchell introduced evidence that Ray Mitchell, Bryan E. Mitchell, Jr., and Lewis L. Crenshaw obtained ownership of the financial agreement in 1981 through a judgment against Killarney Oaks. Bryan E. Mitchell, Jr. later transferred his interest in the financial agreement to Ray Mitchell.

Ray Mitchell filed this lawsuit based on his ownership of 60 percent of the financial agreement and as trustee of the remaining 40 percent owned by the estate of Lewis L. Crenshaw. After Ray Mitchell's death, his wife, as independent executor of his estate and as trustee for the beneficiaries of Ray Mitchell, trustee, continued the suit. Considering the evidence and inferences tending to support the trial court's findings of fact regarding Mitchell's status as a proper party and disregarding all evidence and inferences to the contrary, we hold that Mitchell is a proper party to this suit.

We overrule point of error 25.

## Contract Ambiguity

In point of error five, the District claims the trial court erred in rendering judgment for Mitchell because the agreement is ambiguous. The ambiguity alleged is the obligation of the District to pay "interest on such funds as advanced at a rate of 9½% or such lower rate as may be determined by regulatory authorities." The District contends the agreement is ambiguous because the interest rate can be either 9½ percent or a lower rate as determined by the proper regulatory authority. We disagree.

The question of whether a contract is ambiguous is one of law for the court. The court's primary concern is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. If the contract is so worded that the court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex.1980). The fact that the agreement set the interest rate as the lesser of 9½ percent or the rate determined by the proper regulatory authority does not make the agreement ambiguous.

We overrule point of error five.

2. The Commission set the amount of permissible interest as a liquidated sum, rather than determining a specific interest rate.

3. By the time of trial, the amount of interest, compounded annually at a rate of 9½ percent, had far exceeded the original principal amount of $120,000.

## Condition Precedent

In point of error 24, the District claims the trial court erred in rendering judgment for Mitchell because a condition precedent to payment under the agreement was not met. The District argues that Killarney Oaks was obligated to complete or commence construction on 100 homes before May 18, 1982. This point is without merit because the finance agreement contains no language obligating Killarney Oaks to take any action by May 18, 1982. A projected lot sales program was attached to the financial agreement that predicted that 103 lots would be sold by May 18, 1982, but the financial agreement did not impose any condition precedent.[4]

We overrule point of error 24.

## Commission's Determination of Interest Rate

In points of error one, three, and four, the District claims the trial court erred in rendering judgment for Mitchell because (1) the

4. The relevant language of the financial agreement is as follows:

Attached hereto is Developer's projected lot sales program which is under negotiation for sale at present. Under a recently concluded contract for sale of 12 lots construction is expected to commence in the near future. MUD 48 agrees that it will monitor the progress of this program to the end that it timely develops and consummates a bond sale in an amount sufficient to completely repay all amounts owed to Developer.

5. Act of Apr. 19, 1971, 62d Leg., R.S., ch. 84, sec. 1, § 54.024, 1971 Tex.Gen.Laws 774, 778, *amended by* Act of May 22, 1981, 67th Leg., R.S., ch. 367, sec. 1, § 54.024, 1981 Tex.Gen.Laws 961, 973, *amended by* Act of May 26, 1985, 69th Leg., R.S., ch. 795, § 1.142, 1985 Tex.Gen.Laws 2719, 2777 (TEX.WATER CODE ANN. § 54.024 (Vernon Supp.1995)).

When the agreement was signed in 1978, the agency with supervisory jurisdiction over municipal utility districts was the Texas Department of Water Resources, an agency that was formally subdivided into three parts to exercise different functions: executive (executive director of the Department), legislative (Texas Water Development Board), and judicial (Texas Water Commission). Act of May 17, 1977, 65th Leg., R.S., ch. 870, 1977 Tex.Gen.Laws 2207. Effective September 1, 1985, the legislature abolished the Department, established the Texas Water Development Board and Texas Water Commission as independent state agencies, and gave the Texas

Texas Water Commission had primary jurisdiction over the determination of the interest rate (point of error three) and (2) the financial agreement contemplated that the Commission would review the interest rate (point of error four) and the Commission determined the variables necessary to calculate a specific interest rate under the financial agreement (point of error one). We agree with the District.

In authorizing the creation of municipal utility districts in 1971, the legislature provided for continuing supervision over such districts by the Commission.[5] One of the Commission's duties is to approve the issuance and sale of bonds by municipal utility districts.[6] In order to carry out its duty to approve bonds, the Commission has issued a rule governing reimbursement of interest to developers.[7]

### a. Primary Jurisdiction

▓▓▓ Primary jurisdiction is a judicially created doctrine in which a court may dis-

Water Commission supervisory jurisdiction over municipal utility districts. Act of May 26, 1985, 69th Leg., R.S., ch. 795, 1985 Tex.Gen.Laws 2719. Effective September 1, 1993, the Texas Water Commission was merged into the Texas Natural Resource Conservation Commission (TNRCC). Act of July 30, 1991, 72d Leg., 1st C.S., ch. 3, § 1.085, 1991 Tex.Gen.Laws 4, 42. TNRCC filed an amicus curiae brief and argued that the trial court's judgment effectively constituted an impermissible collateral attack on the Commission's determination of the interest rate.

6. Act of Apr. 19, 1971, 62d Leg., R.S., ch. 84, sec. 1, § 54.516, 1971 Tex.Gen.Laws 774, 799, *amended by* Act of May 22, 1981, 67th Leg., R.S., ch. 367, § 24, 1981 Tex.Gen.Laws 961, 981 (TEX.WATER CODE ANN. § 54.516 (Vernon 1972 & Supp.1995)); 31 TEX.ADMIN.CODE § 311.1 (Oct. 1979), *abolished pursuant to* Act of May 26, 1985, 69th Leg., R.S., ch. 795, § 10.002, 1985 Tex.Gen. Laws 2719, 2820. We cite this administrative rule to the original edition of the *Texas Administrative Code* because the Texas Water Development Board adopted the rule before January 1, 1976 and the rule was therefore not published in the *Texas Register*. *See Instructions for Use*, 1 TEX.ADMIN.CODE at B–2 to B–3 (Oct.1979). The Commission adopted the current rule in 1986. 30 TEX.ADMIN.CODE § 293.1 (1994).

7. The developer interest reimbursement rule that existed at the time the agreement was signed was adopted by the Texas Water Development Board and became effective February 24, 1978. 31 TEX.ADMIN.CODE § 311.48 (Oct.1979) (rule adopted

miss or stay an action pending a resolution of some portion of the case by an administrative agency. *Shell Pipeline Corp. v. Coastal States Trading, Inc.,* 788 S.W.2d 837, 842 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Under the doctrine of primary jurisdiction, a matter delegated by statute to an administrative agency for initial action must be determined by that agency before the matter may be reviewed by a court. *Gregg v. Delhi–Taylor Oil Corp.,* 162 Tex. 26, 344 S.W.2d 411, 413 (1961); *Pedraza v. Tibbs,* 826 S.W.2d 695, 699 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). Under the doctrine of exhaustion of administrative remedies, a party to an administrative proceeding is not entitled to judicial review of the agency's action until the party has pursued its rights to review through the prescribed administrative process. *Texas Education Agency v. Cypress–Fairbanks Indep. Sch. Dist.,* 830 S.W.2d 88, 90 (Tex.1992); *City of Sherman v. Public Util. Comm'n,* 643 S.W.2d 681, 683 (Tex.1983).[8]

▮▮▮ Mitchell characterizes the proceedings before the Commission in this case as an attempt by the Commission to determine the rights of the parties to the financial agreement. We agree with Mitchell that the courts, not administrative agencies, retain jurisdiction to determine controversies that are inherently judicial in nature, unless the legislature has expressly granted exclusive jurisdiction to the agency. *Amarillo Oil v. Energy–Agri Prods., Inc.,* 794 S.W.2d 20, 26 (Tex.1990); *Gregg,* 344 S.W.2d at 415. If the Commission had tried to determine the contractual rights of the parties, then this would have been an invasion of the rights of the judiciary. However, the Commission here did nothing more than approve the District's application for the issuance of $180,000 in bonds to finance water and wastewater plant capacity. As a part of that process, the Commission determined the amount of interest that the developer was due pursuant to the developer interest reimbursement rule.

Mitchell also objects to the proceedings before the Commission because she contends that the Commission had no authority to determine the developer interest reimbursement rate. Mitchell argues that neither the 1978 nor the 1986 versions of the developer interest reimbursement rule allowed the Commission to make a reimbursement rate determination because the agreement was for capacity, rather than the construction of facilities, and both the 1978 and the 1986 versions of the rule only address reimbursement for construction of facilities.[9]

▮▮▮ We are not convinced that the language of the 1978 or the 1986 versions of the developer interest reimbursement rule limits reimbursement to facilities actually constructed within a municipal utility dis-

---

by reference at 3 Tex.Reg. 599 (1978), but the rule's text not published in *Texas Register*), *abolished pursuant to* Act of May 26, 1985, 69th Leg., R.S., ch. 795, § 10.002, 1985 Tex.Gen.Laws 2719, 2820. The Commission adopted a new rule in 1986. 11 Tex.Reg. 3740 (1986) (former 30 Tex.Admin.Code § 293.50). After the Commission's January 20, 1993 approval of the bond sale, the Commission adopted the current developer interest reimbursement rule. 18 Tex.Reg. 3761 (1993), *amended by* 18 Tex.Reg. 9261 (1993) (proposed), 19 Tex.Reg. 2301 (1994) (adopted) (to be codified at 30 Tex.Admin.Code § 293.50).

8. A person affected by a ruling, order, decision, or other act of the Commission may file a suit for judicial review in a district court in Travis County. Tex.Water Code Ann. §§ 5.351, .354 (Vernon 1972); 30 Tex.Admin.Code § 273.6 (1994). Before filing a suit for judicial review, however, the affected person must first file a motion for re-hearing with the Commission. 30 Tex.Admin.Code § 273.1 (1994).

9. The 1978 rule states, "A developer may be reimbursed by the district for interest accrued on approved construction pay estimates, engineering fees, and attendant nonconstruction costs paid by a developer for providing facilities in anticipation of sale to the district." 31 Tex.Admin.Code § 311.48 (Oct. 1979, since abolished). The 1986 rule states, "A developer may be reimbursed by a district for interest accrued for a period of up to two years after the final payment by the developer on approved construction pay estimates, engineering fees, and attendant nonconstruction costs paid by a developer for providing facilities in anticipation of sale to such district." 11 Tex.Reg. 3740 (1986) (former 30 Tex.Admin.Code § 293.50, since amended).

trict, but we need not decide this issue.[10] The legislature has specifically authorized the Commission to approve the issuance and sale of bonds,[11] and the question of whether the Commission complied with its own rules in carrying out the duties delegated to it by the legislature is one that Mitchell should have raised before the Commission and, if necessary, in a suit for judicial review. Mitchell's attempt to challenge the Commission's interpretation of the developer interest reimbursement rule in this case is an impermissible collateral attack on the Commission's determination of the interest rate. *See Grounds v. Tolar Indep. Sch. Dist.,* 707 S.W.2d 889, 890 (Tex.1986).

■ We hold that the Commission had primary jurisdiction to determine the interest rate, and we sustain point of error three.[12]

**b. Lower Rate of Interest**

The trial court also concluded that the Commission's determination of a lump sum of $39,096 in interest was not "a lower rate of interest set by regulatory authorities, as that term is used in the Financial Agreement." We hold that the trial court erred by taking a hypertechnical approach in interpreting the agreement. The agreement clearly contemplated the possibility of a lower amount of interest as may be determined by the regulatory authorities. While any attempt to convert the lump sum of $39,096 into an annual compounded interest rate is bound to produce an uneven result, *e.g.,* 1.90596423 percent as of the first day of trial, there is no question that the Commission determined a lower rate of interest than 9½ percent compounded annually. A suit for judicial review was the proper avenue for challenging the Commission's manner of determining the interest rate. *See Grounds,* 707 S.W.2d at 890.

We sustain points of error one and four.

**Attorney's Fees**

■ In point of error two, the District claims the trial court erred in rendering judgment for Mitchell because attorney's fees cannot be awarded against the District. The District argues that the statute which provides for the recovery of attorney's fees does not allow attorney's fees to be recovered against a municipal utility district. TEX.CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986).[13] We agree.

This issue has been decided in the District's favor by the Austin Court of Appeals in *Lake LBJ Municipal Utility District v. Coulson,* 839 S.W.2d 880 (Tex.App.—Austin 1992, no writ) (interpreting former TEX.REV.

---

**10.** The District provided testimony that the Commission actually applied the former rule in this manner and stated that the Commission's practice has apparently never been contested. Mitchell argues that the Commission has conceded that it has no authority over agreements for capacity because the Commission later amended the rule to include "capacity." *See* 18 Tex.Reg. 3761 (1993), *amended by* 18 Tex.Reg. 9261 (1993) (proposed), 19 Tex.Reg. 2301 (1994) (adopted) (to be codified at 30 TEX.ADMIN.CODE § 293.50).

**11.** *See* note 6.

**12.** Mitchell has also claimed that the Commission was unconstitutionally attempting to interfere with her vested property rights under the agreement. Because we have held that the Commission did not attempt to determine the contractual rights of the parties, we need not address this claim.

**13.** The statute provides that

A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: (1) rendered services; (2) performed labor; (3) furnished material; (4) freight or express overcharges; (5) lost or damaged freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an oral or written contract.

The Code Construction Act defines "person" to include a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." TEX.GOV'T CODE ANN. § 311.005 (Vernon 1988).

CIV.STAT.ANN. art. 2226,[14] since repealed). The Austin Court in *Coulson* held, in effect, that a municipal utility district was neither an individual nor a corporation such that a person could recover attorney's fees against it, thus disagreeing with the opinion of the Beaumont Court of Appeals in *Wickersham Ford, Inc. v. Orange County. Id.* at 890–94; *Wickersham Ford,* 701 S.W.2d 344, 348–49 (Tex.App.—Beaumont 1985, no writ) (holding that Orange County is a person within meaning of former TEX.REV.CIV.STAT.ANN. art. 2226).

■ We agree with the Austin Court that the term "corporation" as used in the attorney's fees statute only applies to private corporations, and we, therefore, do not reach the question of whether the District is a municipal corporation. *Id.* at 892–93. We also note that the Beaumont Court of Appeals has recently declined to follow its own opinion in *Wickersham Ford. Base–Seal, Inc. v. Jefferson County, Tex.,* 901 S.W.2d 783, 787 (Tex.App.—Beaumont 1995, writ denied).

We sustain point of error two.

### Sufficiency of Evidence

■ In points of error six through 23, the District claims the trial court erred in rendering judgment for Mitchell because the evidence is both legally and factually insufficient.[15] The District has wholly failed to brief these points on either the law or the law's relation to the facts of this case. *See* TEX.R.APP.P. 74(*l*). Although appellate courts generally construe the briefing rules liberally, points of error unsupported by the citation of authority present nothing for the court to review. *Raitano v. Texas Dep't of Pub. Safety,* 860 S.W.2d 549, 554 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

We overrule points of error six through 23.

**14.** Act of May 18, 1979, 66th Leg., R.S., ch. 314, 1979 Tex.Gen.Laws 718.

**15.** The combined argument and authorities under these points of error consist of the following: "MUD 48 argues that no evidence or insufficient evidence exists to support Findings of Fact Num-

### Conclusion

The trial court committed reversible error in that portion of its judgment that awards prejudgment interest and attorney's fees to Mitchell. Accordingly, we modify the trial court's judgment insofar as it awards prejudgment interest and attorney's fees and reform the judgment so that (1) Mitchell recovers $39,096 in interest as determined by the Texas Water Commission in addition to the principal sum of $120,000 and post-judgment interest specified in the trial court's judgment and (2) the $29,986.41 award of attorney's fees is deleted. As modified, we affirm the judgment of the trial court.

bers Six through Twenty–Five. In the alternative, MUD 48 would argue that Findings of Fact Numbers Six through Twenty–Five are against the great weight and preponderance of the evidence."