Opinion issued October 30, 2008









In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01020-CV






C/S SOLUTIONS, INC., Appellant


V.


ENERGY MAINTENANCE SERVICES GROUP LLC; ENERGY
MAINTENANCE SERVICES COMPANY, LP; EMS MEASUREMENT
SERVICES LP; ENERGY MAINTENANCE SERVICES GROUP I, LLC;
EMS PIPELINE SERVICES LLC; ARTHUR ROBBINS; AND TIM
NESLER, Appellees






On Appeal from County Civil Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 818096






and









NO. 01-07-00168-CV






C/S SOLUTIONS, INC.; GREG YOUNG; DAVID GALDAMEZ; AND
EARL LONGORIA, Appellants


V.


EMS MEASUREMENT SERVICES LP; EMS PIPELINE SERVICES LLC;
ENERGY MAINTENANCE SERVICES COMPANY, LP; ENERGY
MAINTENANCE SERVICES GROUP; ENERGY MAINTENANCE
SERVICES GROUP I, LLC; ENERGY MAINTENANCE SERVICES
GROUP LLC; TIM NESLER; ARTHUR ROBBINS; AND HARVEY
SCHNITZER, Appellees






On Appeal from the 400th District Court

Fort Bend County, Texas

Trial Court Cause No. 05-CV-145487






and






NO. 01-07-01054-CV






IN RE C/S SOLUTIONS, INC., Relator






Original Proceeding on Petition for Writ of Mandamus






O P I N I O N

 In these two appeals and mandamus, we must decide the effect of nonsuits and
the res judicata effect of a county-court-at-law judgment on a related lawsuit in
district court. We affirm the county-court appeal, reverse the district-court appeal,
and dismiss as moot the mandamus proceeding.

Facts

 The underlying controversy arises out of a 2001 contract between appellant C/S
Solutions, Inc. and Hanover Measurement Services Company, L.P., in which C/S
Solutions was to assist with computer programming on a gas measurement software
system. Hanover was sold in 2004 to Energy Maintenance Services Company
("EMS"). (1) Appellees Tim Nesler and Arthur Robbins are officers of EMS.

 Disputes arose between C/S Solutions and EMS regarding payment, and C/S
Solutions in 2004 sued EMS, Nesler, and Robbins in the County Civil Court at Law
No. 2 of Harris County (trial court case number 818096) for breach of contract, fraud,
and other claims. EMS counterclaimed against C/S Solutions for breach of contract
and fraud.

 EMS (except Energy Maintenance Services Company, LP), Nesler, and
Robbins on March 11, 2005 moved for partial summary judgment on C/S Solutions
claims against EMS other than breach of contract and for all claims against Nesler
and Robbins. The county court on April 11, 2005 heard and denied the motion for
summary judgment, but later on April 19, 2005 "voided" the April 11 ruling.

 Before trial, EMS, Nesler, and Robbins moved to bifurcate the trial. The
county court granted the motion, separating C/S Solutions's breach-of-contract claim
into a separate trial from C/S Solutions's fraud claims and EMS's counterclaims. C/S
Solutions's breach-of-contract claim against EMS was tried to a jury from July 12 to
September 12, 2005. C/S Solutions rested its case on August 30, 2005. The jury
found that EMS breached the contract and awarded C/S Solutions damages of
$92,432 and attorney's fees. On September 15, 2005, EMS, Nesler, and Robbins
asked the county court to rule on the March 11, 2005 motion for partial summary
judgment.

 On September 28, 2005, C/S Solutions filed "nonsuits" as to all claims against
Nesler and Robbins. On October 6, 2005, appellants C/S Solutions, Greg Young,
David Galdamez, and Earl Longoria filed suit in the 400th District Court of Fort Bend
County against the following appellees for fraud: EMS Measurement Services LP;
EMS Pipeline Services LLC; Energy Maintenance Services Co., LP; Energy
Maintenance Services Group; Energy Maintenance Services Group I, LLC; Energy
Maintenance Services Group LLC; Tim Nesler; Arthur Robbins; and Harvey
Schnitzer. Young, Galdamez, and Longoria are principals of C/S Solutions and
Schnitzer is an officer and director of EMS.

 On October 18, 2005, C/S Solutions filed a "nonsuit" in the county court case
"as to all fraud claims against Defendant Energy Maintenance Services Group a.k.a.
Energy Measurement Services Company, LP." EMS, Nesler, and Robbins claim they
learned about the Fort Bend County district court case on October 19, 2005, and the
next day, October 20, they again asked the county court to rule on the pending motion
for partial summary judgment and asked for an oral hearing on October 21, 2005. 
Also on October 20, C/S Solutions filed another nonsuit stating:

 Plaintiff[] . . . gives notice of non-suit without prejudice . . . as to all
fraud claims remaining under the Court's Order as to Separate Trial
entered into the record and incorporated by reference as if fully stated
herein. Thus, any claims Plaintiff has asserted against any Defendant
including Energy Maintenance Services Group LLC, Energy
Maintenance Services Group I LLC, EMS Pipeline Services LLC and
EMS Measurement Services Company or any other entity named in this
lawsuit as Defendant, including Tim Nesler and Art Robbins
individually, all such claims for fraud are hereby non-suited without
prejudice and Plaintiff specifically reserves the right to refile same.

 On October 21, 2005, the county court rendered judgment on the verdict that
C/S Solutions recover on its breach-of-contract claim $92,432 and attorney's fees
from (1) Energy Maintenance Services Group LLC, (2) Energy Maintenance Services
Group I, LLC, and (3) EMS Pipeline Services LLC. In its judgment the county court
also rendered a take-nothing judgment on the fraud counterclaims. (2) On that same
day, the county court also granted the March 11, 2005 motion for partial summary
judgment, which disposed of C/S Solutions' claims against EMS other than breach
of contract and for all claims against Nesler and Robbins. The judgment contained
a Mother Hubbard clause, so the county court on October 21 rendered a final
judgment.

 C/S Solutions filed a postjudgment motion asking the county court to recognize
the "previously filed non-suits regarding Art Robbins and Tim Nesler and as to its
remaining fraud cause of action against Defendant EMS." The county court denied
the motion.

 On November 17, 2005, EMS, Nesler, Robbins, and Schnitzer filed a motion
for summary judgment based on res judicata from the October 21, 2005 county court
judgment. The district court signed a final judgment on March 10, 2006 stating, "It
is ordered that C/S Solutions, Inc., Greg Young, David Galdamez and Earl Longoria
take nothing from the Defendants that they have sued in this case, and said claims are
hereby dismissed without prejudice." Although the final judgment does not state it
is a summary judgment, the only motion before the district court was the
November 17 motion for summary judgment.

 Finally, on December 12, 2007, C/S Solutions filed a petition for a writ of
mandamus directed at the county court judge, seeking to force the judge to recognize
the nonsuits and set aside the October 21, 2005 order granting the March 11, 2005
motion for partial summary judgment.

DiscussionThe county court at law case

 In the county court at law case (trial court number 818096; appellate case
number 01-05-00746-CV), C/S Solutions brings seven issues: (1) the county court
erred in not recognizing the nonsuits; (2) the county court had no jurisdiction to
render the summary judgment as the parties and claims were no longer before the
court; (3) there was inadequate notice of the summary-judgment hearing; (4) the
county court erred by considering the summary-judgment motion on an emergency
basis and by ordering C/S Solutions not to respond to the motion for summary
judgment; (5) the summary-judgment evidence was defective; (6) fact issues exist that
preclude summary judgment; and (7) the "final judgment" order conflicts with the
summary-judgment order.

1. Nonsuit

 In issue one, C/S Solutions claims that it had an absolute right (1) to nonsuit
all the fraud claims and (2) to nonsuit Nesler and Robbins. C/S Solutions therefore
argues that the county court's refusal to recognize those nonsuits resulted in the
erroneous rendition of summary judgment. Addressing this issue requires that we
carefully distinguish between (1) the use of the term "nonsuit" as a generic means of
describing a dismissal of parties and/or claims and (2) a true nonsuit under Texas
Rule of Civil Procedure 162. (3)

 Our analysis starts with the relevant rules:

 Rule 162. Dismissal or Non-suit

 At any time before the plaintiff has introduced all of his evidence
other than rebuttal evidence, the plaintiff may dismiss a case, or take a
non-suit, which shall be entered in the minutes. Notice of the dismissal
or non-suit shall be served in accordance with Rule 21a on any party
who has answered or has been served with process without necessity of
court order.

 Any dismissal pursuant to this rule shall not prejudice the right of
an adverse party to be heard on a pending claim for affirmative relief or
excuse the payment of all costs taxed by the clerk. A dismissal under
this rule shall have no effect on any motion for sanctions, attorney's fees
or other costs, pending at the time of dismissal, as determined by the
court. Any dismissal pursuant to this rule which terminates the case
shall authorize the clerk to tax court costs against dismissing party
unless otherwise ordered by the court.

Tex. R. Civ. P. 162. (4)

 Strictly speaking, a Rule 162 nonsuit applies to a dismissal of the entire case. 
If a plaintiff wishes to dismiss less than all of the parties, Rule 163 also applies:

 Rule 163. Dismissal As To Parties Served, Etc.

 When it will not prejudice another party, the plaintiff may dismiss
his suit as to one or more of several parties who were served with
process, or who have answered, but no such dismissal shall in any case,
be allowed as to a principal obligor, except in the cases provided for by
statute.

Tex. R. Civ. P. 163.

 Rules 162 and 163 allow a plaintiff greater leeway to dismiss a case or dismiss
one or more parties to a case than the general rule for amending pleadings:

 Rule 63. Amendments and Responsive Pleadings

 Parties may amend their pleadings, respond to pleadings on file
of other parties, file suggestions of death and make representative
parties, and file such other pleas as they may desire by filing such pleas
with the clerk at such time as not to operate as a surprise to the opposite
party; provided, that any pleadings, responses or pleas offered for filing
within seven days of the date of trial or thereafter, or after such time as
may be ordered by the judge under Rule 166, shall be filed only after
leave of the judge is obtained, which leave shall be granted by the judge
unless there is a showing that such filing will operate as a surprise to the
opposite party.

Tex. R. Civ. P. 63. A plaintiff can dismiss a party from the lawsuit by filing an
amended petition that omits that party, but Rules 162 and 163 allow the plaintiff to
nonsuit a party within seven days of trial without leave of court.

 Rules 162 and 163 do not authorize a plaintiff to dismiss some, but not all,
claims against a defendant. (5) Rule 63, however, allows a plaintiff to file an amended
pleading that omits a claim, and Rule 165 discusses a claim that is abandoned:

 Rule 165. ABANDONMENT.--A party who abandons any part
of his claim or defense, as contained in the pleadings, may have that fact
entered of record, so as to show that the matters therein were not tried.

Tex. R. Civ. P. 165.

 Based on these rules, treatises have drawn a distinction between a pure
Rule 162 nonsuit, which voluntarily dismisses the entire case, and a voluntary
dismissal that abandons the case as to certain parties and/or claims. See 5 Roy W.
McDonald & Elaine A. Carlson, Texas Civil Practice § 27.43 (1999); 1 Tex.
Jur. 3d Actions §§ 248, 267, 271 (2004). This distinction has no practical effect
when a plaintiff files a written "nonsuit" that abandons the case as to certain claims
so long as the written "nonsuit" does not run afoul of the time restrictions in Rule 63. (6) 
Under our liberal pleading rules, the document is in substance an amended pleading
voluntarily dismissing the claims, notwithstanding the fact that the word "nonsuit"
appears. See Tex. R. Civ. P. 71 (misnomer of pleadings); State Bar v. Heard, 603
S.W.2d 829, 833 & n.5 (Tex. 1980) ("We look to the substance of a plea for relief to
determine the nature of the pleading, not merely at the form of title given to it."). 
Similarly, the distinction between a pure Rule 162 nonsuit and a voluntary dismissal
that abandons the case as to certain parties has no practical effect unless a plaintiff
"nonsuits" those parties in a situation in which another party is prejudiced under Rule
163. (7)

 Here, C/S Solutions claims it had an absolute right to nonsuit all the fraud
claims and to nonsuit Nesler and Robbins. See, e.g., BHP Petroleum Co. v. Millard,
800 S.W.2d 838, 840-41 (Tex. 1990) (discussing plaintiff's right to nonsuit). Were
C/S Solutions correct, the trial court's summary judgment was erroneous. However,
for the reasons discussed above, C/S Solutions did not have an absolute right to
nonsuit.

 First, the abandonment of the fraud claims is not governed by Rule 162. See
Messmer v. State Farm County Mut. Ins. Co., 972 S.W.2d 774, 779 (Tex.
App.--Corpus Christi 1998, no pet.). C/S Solutions was in substance amending its
pleadings, something for which it needed leave of court under Rule 63 because the
summary-judgment hearing had already been held. See Goswami v. Metro. Sav. &
Loan Ass'n, 751 S.W.2d 487, 490 (Tex. 1988) (applying Rule 63 to
summary-judgment proceedings). The county court refused to recognize the
"nonsuits," so we cannot presume the court granted leave to amend. See id.

 Second, the dismissal of Nesler and Robbins is governed by Rule 163, which 

conditions a plaintiff's dismissal of less than all defendants on that dismissal not
prejudicing another party. The county court refused to recognize the "nonsuits" as
to Nesler and Robbins, and C/S Solutions has not argued in the trial court or on
appeal that the trial court abused its discretion under Rule 163. Instead, C/S
Solutions has treated its dismissal of Nesler and Robbins as a pure Rule 162 nonsuit.

 We overrule issue one.

2. Jurisdiction to render summary judgment

 In issue two, C/S Solutions claims the county court had no jurisdiction to
render the summary judgment as the parties and claims were no longer before the
court. Because we have already determined that the "nonsuits" were ineffective, we
hold the county court had jurisdiction to render the summary judgment.

 We overrule issue two.

3. Inadequate notice of reconsideration of summary judgment

 In issue three, C/S Solutions claims that it did not receive adequate notice of
the October 21, 2005 summary-judgment hearing, in violation of Texas Rules of Civil
Procedure 21 and 166a(c), the due course of law provisions of Texas Constitution
article I, section 19, and the Due Process Clause of the Fourteenth Amendment. In
essence, C/S Solutions argues that the March 11, 2005 partial motion for summary
judgment--which was submitted on April 11, 2005 at a hearing and denied, but a
week later that ruling was "voided"--was no longer a live motion under submission,
but was instead a "Ghost" motion. C/S Solutions continues by then arguing it had no
idea what EMS, Nesler, and Robbins were asking the county court to reconsider.

 The March 11, 2005 motion for partial summary judgment was a live,
submitted motion. The hearing required by Texas Rule of Civil Procedure 166a(c)
occurred on April 11, 2005. The record does not show that any new
summary-judgment evidence or briefing was filed. Yet C/S Solutions's lawyer, who
attended the hearing, claims

 [he] had no way of knowing what summary judgment motion, real or
imaginary, was actually being discussed. When the trial court actually
signed Appellees' proposed order, Appellant's counsel was stunned. . . .
Thus, Appellant was at a loss to understand what Appellees were
noticing on Oct. 20th and did not fully discern it until after the hearing. 
In the end, instead of another "Ghost" motion, Appellees resurrected a
"Phoenix." It was impossible for Appellant to know what motion the
trial court was going to consider on Oct. 21st from the Oct. 20th notice of
hearing.

Nowhere in C/S Solutions's trial or appellate arguments, however, is there an
allegation that any new motions, pleadings, or evidence were filed or otherwise
presented or argued to the county court since the original submission of the motion. 
Furthermore, C/S Solutions does not allege that anyone at (or before) the October 21
hearing refused to explain what summary-judgment motion was under consideration
or otherwise mislead C/S Solutions.

 It is not uncommon for motions for summary judgment to be submitted and
pend for long periods of time in the trial court. See Timothy Patton, Summary
Judgments in Texas: Practice, Procedure and Review § 7.04 (3d ed. 2007). 
And there is generally no procedure by which litigants can compel the trial court to
rule on a pending motion for summary judgment. Id. The county court could have
simply ruled without a hearing. It is harmless error at worst for the trial court to rule
on the submitted motion for partial summary judgment at a postsubmission hearing
at which C/S Solutions's lawyer was present, nothing new was filed or argued, and
no substantive argument is made on appeal regarding harm.

 We overrule issue three.

4. Emergency summary-judgment hearing and order that C/S Solutions not respond

 In issue four, C/S Solutions claims the county court

 erred by holding an "Emergency" summary judgment hearing and erred
by ordering Appellant not to file any response to any summary
judgment. The trial court also erred and violated Appellant's Due
Process and Open Court's rights by ordering Appellant not to respond
to any summary judgment motion and by considering Appellees' motion
for summary judgment with less than 24 hours notice.

We have discussed the timing of the October 21 summary-judgment hearing above. 
C/S Solutions neither points to any place in the record where the county court ordered
it not to respond, nor does it provide any substantive briefing on this issue. See
Harris County Mun. Until. Dist. No. 48 v. Mitchell, 915 S.W.2d 859, 866 & n.15
(Tex. App.--Houston 1995, writ denied) (discussing failure to adequately brief).

 We overrule issue four.

5. Defective summary-judgment evidence

 In issue five, C/S Solutions claims the county court erred in rendering partial
summary judgment because Nesler did not sign his affidavit, which was attached to
the March 11, 2005 summary-judgment evidence. (8) C/S Solutions's argument on this
issue consists of a general discussion of affidavits and summary-judgment evidence. 
Assuming Nesler's affidavit was not competent summary-judgment evidence, C/S
Solutions does not explain why the county court was precluded from rendering partial
summary judgment. We decline to speculate what that argument could be.

 We overrule issue five.

6. Fact issues exist that preclude summary judgment

 In issue six, C/S Solutions makes the following argument:

 In addition, Appellant's Response demonstrates the existence of fact
issues to preclude summary judgment even if Nesler's affidavit was
valid. CR 184-286. Thus, the trial court's entry of summary judgment
was error.

We overrule this issue following our rationale in Harris County Municipal Utility
District No. 48 v. Mitchell. 915 S.W.2d at 866 & n.15 (discussing failure to
adequately brief).


7. Conflict between the "final judgment" and summary-judgment orders

 C/S Solutions's issue seven is:

 The trial court erred by signing a final judgment disposing of all matters
and specifically stating all relief not granted is denied and then taking
up and entering Appellees' summary judgment.

We can find no argument in the appellant's brief on this issue. The appellees' brief
responds that even if the "final judgment" was signed before the partial summary
judgment, the county court had plenary power to modify its own judgment. We
agree. In its reply brief, C/S Solutions concedes, "This may be true," but then
reiterates its nonsuit and lack-of-proper-notice arguments. Issue seven is overruled.

 We affirm the county court at law's judgment (trial court number 818096;
appellate case number 01-05-00746-CV). We would normally award to EMS, Nesler,
and Robbins all appellate costs, i.e., tax costs against C/S Solutions. See Tex. R. App.
P. 43.4. The reporter's record--requested by EMS, Nesler, and Robbins--was,
however, unnecessary to the disposition of the appeal. (9) Accordingly, we tax the cost
of the reporter's record against EMS, Nesler, and Robbins. Id. We award to EMS,
Nesler, and Robbins all other appellate costs. Id. Finally, we render judgment that
C/S Solutions recover against the cash deposit in lieu of a supersedeas bond that
Energy Maintenance Services Group LLC, Energy Maintenance Services Group I,
LLC, and EMS Pipeline Services LLC have deposited with the county clerk for the
portion of the county court's judgment awarding C/S Solutions $92,432 in
breach-of-contract damages and attorney's fees. See Tex. R. App. P. 43.5.

The district court case

 In the district court case (trial court number 05-CV-145487; appellate case
number 01-07-00168-CV), C/S Solutions brings six issues: (1) the district court erred
in dismissing based on res judicata; (2) Civil Practice and Remedies Code section
31.004 precluded use of the county-court judgment as res judicata; (3) the
county-court judgment was not final and therefore could not provide the basis for a
res-judicata summary-judgment dismissal in district court; (4) the district court erred
in dismissing, rather than abating; (5) the district court violated the open-courts and
due-course-of law provisions of the Texas Constitution, as well as the Due Process
Clause; and (6) the district court erred in not stating the grounds for its dismissal.

 The relevant portion of the district court's final judgment follows: "It is
Ordered that C/S Solutions, Inc., Gregg Young, David Galdamez and Earl Longoria
take nothing from the Defendants that have sued in this case, and said claims are
hereby dismissed without prejudice." (10) The only request pending before the district
court to dispose of the case was EMS, Nesler, Robbins, and Schnitzer's motion for
summary judgment based on the alleged res judicata effect of the county-court
judgment for EMS, Nesler, and Robbins . We presume the district court's judgment
was rendered pursuant to the motion for summary judgment, as it would have been
error to dismiss sua sponte absent lack of jurisdiction.

 In issue two, C/S Solutions, Young, Galdamez, and Longoria claim the trial
court could not render summary judgment based on the res judicata effect of the
county-court judgment because Civil Practice and Remedies Code section 31.004(a)
provides, "A judgment or a determination of fact or law in a proceeding in a lower
trial court is not res judicata and is not a basis for estoppel by judgment in a
proceeding in a district court, except that a judgment rendered in a lower trial court
is binding on the parties thereto as to recovery or denial of recovery." (11) See Tex. Civ.
Prac. & Rem. Code Ann. § 31.004(a) (Vernon 2008). Civil Practice and Remedies
Code section 31.004(c) defines "lower trial court" to be "a small claims court, a
justice of the peace court, a county court, or a statutory county court." Tex. Civ.
Prac. & Rem. Code Ann. § 31.004(c) (Vernon 2008).

 This statute modifies the common law so that res judicata bars only those
claims that were actually litigated in the limited-jurisdiction court. See Webb v.
Persyn, 866 S.W.2d 106, 107 (Tex. App.--San Antonio 1993, no writ). The plain
purpose of the statute is to narrow the preclusive effect of judgments from courts of
limited jurisdiction. Id. If a litigant chooses to litigate one or more issues in county
court, the judgment will bar further litigation of the claim for relief actually tried. Id. 
But the judgment will not preclude any other claims that could have been joined and
tried, but were not. (12) Id.

 Young, Galdamez, Longoria, and Schnitzer are not parties to the county-court
judgment. (13) At a minimum, the summary judgment is erroneous for disposing of
those parties. We therefore sustain issue two. Because our ruling on this issue
renders the other issues moot, we do not reach them.

 We reverse the district court's judgment and remand the case to the district
court for further proceedings (trial court number 05-CV-145487; appellate case
number 01-07-00168-CV).

The mandamus proceeding

 In appellate case number 01-07-01054-CV, C/S Solutions asks this Court to
issue a writ of mandamus to compel Judge Block, the former county-court judge to
sign an order acknowledging C/S Solutions's nonsuits and to vacate the partial
summary judgment. (14) In light of our disposition of appellate case number
01-05-01020-CV, we dismiss as moot the petition for want of jurisdiction.

Conclusion

 We affirm the county court at law's judgment, we reverse the district court's
judgment and remand the case to the district court for further proceedings, and we
dismiss the petition for a writ of mandamus as moot.




 Sam Nuchia

 Justice


Panel consists of Chief Justice Radack and Justices Nuchia and Higley.
1. In case number 01-05-01020-CV, EMS consists of appellees Energy
Maintenance Services Group LLC; Energy Maintenance Services Company,
LP; EMS Measurement Services LP; Energy Maintenance Services Group I,
LLC; and EMS Pipeline Services LLC. In case number 01-07-00168-CV,
EMS consists of the same appellees plus an additional party, appellee Energy
Maintenance Services Group.
2. The counterclaims of (1) Energy Maintenance Services Group LLC, (2) Energy
Maintenance Services Group I, LLC, and (3) EMS Pipeline Services LLC were
previously "nonsuited" on March 30, 2005.
3. A nonsuit is generally defined as "[a] plaintiff's voluntary dismissal of a case
or of a defendant, without a decision on the merits." Black's Law
Dictionary 1081 (7th ed. 1999). See Restatement (Second) of
Judgments § 20(1)(b) & cmt. f (1982) (discussing effect of voluntary
nonsuit).
4. Nonsuits were originally governed by statute, beginning in 1846:


 Sec. 99. Be it further enacted, That no plaintiff shall
be permitted to suffer a non-suit on trial, after the jury have
retired from the bar.


 This was amended in 1853:


 Sec. 99. No plaintiff shall be permitted to suffer a
nonsuit after the jury retire from the bar, but after the
argument of a cause, and before the jury retires, the Judge
may deliver a charge to them on the law of the case . . . .


 The nonsuit statutes became part of the Revised Statutes: 

 

 1879 Revised Statutes article 1301


 Art. 1301. At any time before the jury have retired
the plaintiff may take a non-suit, but he shall not thereby
prejudice the right of an adverse party to be heard on his
claim for affirmative relief; when the case is tried by the
judge such non-suit may be taken at any time before the
decision is announced. 

 

 1895 Revised Statutes article 1301


 Art. 1301. [1301] At any time before the jury have
retired the plaintiff may take a nonsuit, but he shall not
thereby prejudice the right of an adverse party to be heard
on his claim for affirmative relief; when the case is tried by
the judge such nonsuit may be taken at any time before the
decision is announced. 

 

 1911 Revised Statutes article 1955


 Art. 1955. [1301] [1301] Nonsuit may be taken,
when.--At any time before the jury have retired, the
plaintiff may take a nonsuit, but he shall not thereby
prejudice the right of an adverse party to be heard on his
claim for affirmative relief; when the case is tried by the
judge such nonsuit may be taken at any time before the
decision is announced. 

 

 1925 Revised Statutes article 2182


 Art. 2182. [1955] [1301] [1301] Non-suit.--At
any time before the jury has retired, the plaintiff may take
a non-suit, but he shall not thereby prejudice the right of an
adverse party to be heard on his claim for affirmative relief. 
When the case is tried by the judge, such non-suit may be
taken at any time before the decision is announced.


 Act approved May 13, 1846, 1st Leg., R.S., § 99, 1846 Tex. Gen. Laws 363,
390, reprinted in 2 H.P.N. Gammel, The Laws of Texas 1822-1897, at 1669,
1696 (Austin, Gammel Book Co. 1898), amended by Act approved Feb. 5,
1853, 4th Leg., 2d C.S., § 1, sec. 99, 1853 Tex. Gen. Laws 19, 19, reprinted in
3 H.P.N. Gammel, The Laws of Texas 1822-1897, at 1303, 1303 (Austin,
Gammel Book Co. 1898), repealed and recodified by Revised Statutes, 16th
Leg., R.S., § 1, art. 1301, § 4, 1879 Tex. Rev. Civ. Stat. 2, 206 (recodification),
718 (repealer), repealed and recodified by Revised Statutes, 24th Leg., R.S.,
§ 1, art. 1301, § 4, 1895 Tex. Rev. Civ. Stat. 1, 285 (recodification), 1103
(repealer), repealed and recodified by Revised Statutes, 32d Leg., R.S., § 1, art.
1955, § 4, 1911 Tex. Rev. Civ. Stat. 2, 432 (recodification), 1719 (repealer),
repealed and recodified by Revised Statutes, 39th Leg., R.S., § 1, art. 2182,
§ 2, 1925 Tex. Rev. Civ. Stat. 2, 588 (recodification), 2419 (repealer).


 With the adoption of the Texas Rules of Civil Procedure, nonsuits were
governed by Rule 164:


 Rule 164. NON-SUIT.--At any time before the jury
has retired, the plaintiff may take a non-suit, but he shall
not thereby prejudice the right of an adverse party to be
heard on his claim for affirmative relief. When the case is
tried by the judge, such non-suit may be taken at any time
before the decision is announced.


 Tex. R. Civ. P. 164, 136 Tex. 491 (1940). Former Rule 164 was amended in
1975:


 Rule 164. Non-Suit

 Upon the trial of any case at any time before plaintiff
has rested his case, i.e., has introduced all of his evidence
other than rebuttal evidence, the plaintiff may take a
non-suit, but he shall not thereby prejudice the right of an
adverse party to be heard on his claim for affirmative relief.


 Tex. R. Civ. P. 164, 38 Tex. B.J. 825 (1975). In 1983, former Rule 164 was
amended once again:


 Rule 164. Non-Suit

 Upon the trial of any case, at any time before
plaintiff has introduced all of his evidence other than
rebuttal evidence, the plaintiff may take a non-suit, but he
shall not thereby prejudice the right of an adverse party to
be heard on his claim for affirmative relief. In the event a
motion for sanctions is pending, or the party taking the
non-suit has been ordered to pay either attorney fees or
other costs, or both, as sanctions for failing to comply with
court orders and has failed to pay such fees or costs, or
both, the non-suit shall have no effect upon the liability for
attorney fees, sanctions, or other costs.


 Tex. R. Civ. P. 164, 47 Tex. B.J. (Tex. R. Civ. P. Supp.) 7 (Feb. 1984). Former
Rule 164 was repealed in 1987, at which time current Rule 162 was adopted. 
50 Tex. B.J. 850 (1987). In 1987, the phrase "the plaintiff may take a
non-suit" was replaced by "the plaintiff may dismiss a case, or take a non-suit,"
to clarify that a nonsuit disposed of the "cause of action." See Tex. R. Civ. P.
162 cmt. In the context of the 1987 amendment, we interpret the comment's
use of "cause of action" to mean the entire lawsuit, rather than a claim. See
Black's Law Dictionary 214 (7th ed. 1999) (defining "cause of action").


 

5. Dismissing all claims against a single defendant has the legal effect of
dismissing that defendant as a party.
6. An example from this Court is Mainland Savings Ass'n v. Wilson, in which a
claim to one of three promissory notes was "nonsuited" on February 25, 1976,
more than seven days before the March 8, 1976 summary-judgment
submission. 545 S.W.2d 491, 492-93 (Tex. Civ. App.--Houston [1st Dist.]
1976, no writ) ("At the time the plaintiff filed its motion for non-suit it was not
precluded from amending its pleading . . . . Nor was plaintiff then prohibited
under Rule 164 T.R.C.P. from abandoning all or any portion of the causes of
action which it asserted against the defendant.").
7. From a practical standpoint, the distinction between a pure Rule 162 nonsuit
and a voluntary partial dismissal is largely academic, because it is a rare
situation in which a defendant is harmed by such action.
8. A sworn and signed affidavit from Nesler was filed on April 5, 2005.
9. The reporter's fee is $ 19,966.00. Furthermore, the reporter's record was not
filed until April 30, 2008, resulting in a delay in submitting the appeal of two
years and seven months.
10. We note that the district court's judgment, which renders a judgment on the
merits that C/S Solutions, Young, Galdamez and Longoria take nothing and
dismisses the case without prejudice, is internally contradictory.
11. The statute uses the term "res judicata" in the broad sense, referring to both
claim and issue preclusion. See generally Restatement (Second) of
Judgments ch. 3 introductory note (1982) (defining "res judicata" as
including concepts of merger, bar, and issue preclusion).
12. The policy reasons for limiting the preclusive effect of judgments of statutory
county court with broad subject-matter jurisdiction is something for the
legislature to consider. It is rare, however, for parties and issues not litigated
in a statutory county court with broad subject-matter jurisdiction to later be
litigated in district court, because of the economics of litigation and the
running of statutes of limitations. See generally Restatement (Second) of
Judgments § 24 & cmt. g, § 26 & cmt. c (1982) (Restatement approach to this
issue).
13. We need not consider whether the parties to the district-court case who were
not parties to the county-court case were in privity with a party bound by the
county-court judgment, because the preclusive effect of a prior adjudication on
a nonparty, i.e., privity, is governed by the rules of res judicata, which do not
apply under Civil Practice and Remedies Code section 31.004(a). 
See generally Restatement (Second) of Judgments ch. 1 scope note, ch. 4
introductory note (1982) (defining concept of "privity").
14. We previously denied a similar petition, due to the pendency of the appeal in
appellate case number 01-05-01020-CV. See In re C/S Solutions, Inc., No.
01-06-00040-CV (Tex. App.--Houston [1st Dist.] Mar. 14, 2006, orig.
proceeding). We also note that were we not dismissing the petition, we would
have to abate appellate case number 01-07-01054-CV to allow the current
county judge to reconsider Judge Block's decision. See Tex. R. App. P. 7.2(b).