C/S SOLUTIONS, INC., Appellant,

v.

ENERGY MAINTENANCE SERVICES GROUP LLC; Energy Maintenance Services Company, LP; EMS Measurement Services LP; Energy Maintenance Services Group I, LLC; EMS Pipeline Services LLC; Arthur Robbins; and Tim Nesler, Appellees.

C/S Solutions, Inc.; Greg Young; David Galdamez; and Earl Longoria, Appellants,

v.

EMS Measurement Services LP; EMS Pipeline Services LLC; Energy Maintenance Services Company, LP; Energy Maintenance Services Group; Energy Maintenance Services Group I, LLC; Energy Maintenance Services Group LLC; Tim Nesler; Arthur Robbins; and Harvey Schnitzer, Appellees.

In re C/S Solutions, Inc., Relator.

Nos. 01–05–01020–CV, 01–07–00168–CV, 01–07–01054–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 30, 2008.

Lloyd E. Kelley, Lloyd E. Kelley & Associates, Houston, TX, for Appellant.

William H. Luck Jr., Humble, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

In these two appeals and mandamus, we must decide the effect of nonsuits and the res judicata effect of a county-court-at-law judgment on a related lawsuit in district court. We affirm the county-court appeal, reverse the district-court appeal, and dismiss as moot the mandamus proceeding.

### Facts

The underlying controversy arises out of a 2001 contract between appellant C/S Solutions, Inc. and Hanover Measurement Services Company, L.P., in which C/S Solutions was to assist with computer programming on a gas measurement software system. Hanover was sold in 2004 to Energy Maintenance Services Company ("EMS").[1] Appellees Tim Nesler and Arthur Robbins are officers of EMS.

Disputes arose between C/S Solutions and EMS regarding payment, and C/S Solutions in 2004 sued EMS, Nesler, and Robbins in the County Civil Court at Law No. 2 of Harris County (trial court case number 818096) for breach of contract, fraud, and other claims. EMS counterclaimed against C/S Solutions for breach of contract and fraud.

EMS (except Energy Maintenance Services Company, LP), Nesler, and Robbins on March 11, 2005 moved for partial summary judgment on C/S Solutions claims against EMS other than breach of contract and for all claims against Nesler and Robbins. The county court on April 11, 2005 heard and denied the motion for summary judgment, but later on April 19, 2005 "voided" the April 11 ruling.

Before trial, EMS, Nesler, and Robbins moved to bifurcate the trial. The county court granted the motion, separating C/S Solutions's breach-of-contract claim into a separate trial from C/S Solutions's fraud claims and EMS's counterclaims. C/S Solutions's breach-of-contract claim against EMS was tried to a jury from July 12 to September 12, 2005. C/S Solutions rested its case on August 30, 2005. The jury found that EMS breached the contract and awarded C/S Solutions damages of $92,432 and attorney's fees. On September 15, 2005, EMS, Nesler, and Robbins asked the county court to rule on the March 11, 2005 motion for partial summary judgment.

On September 28, 2005, C/S Solutions filed "nonsuits" as to all claims against Nesler and Robbins. On October 6, 2005,

---

1. In case number 01–05–01020–CV, EMS consists of appellees Energy Maintenance Services Group LLC; Energy Maintenance Services Company, LP; EMS Measurement Services LP; Energy Maintenance Services Group I, LLC; and EMS Pipeline Services LLC. In case number 01–07–00168–CV, EMS consists of the same appellees plus an additional party, appellee Energy Maintenance Services Group.

appellants C/S Solutions, Greg Young, David Galdamez, and Earl Longoria filed suit in the 400th District Court of Fort Bend County against the following appellees for fraud: EMS Measurement Services LP; EMS Pipeline Services LLC; Energy Maintenance Services Co., LP; Energy Maintenance Services Group; Energy Maintenance Services Group I, LLC; Energy Maintenance Services Group LLC; Tim Nesler; Arthur Robbins; and Harvey Schnitzer. Young, Galdamez, and Longoria are principals of C/S Solutions and Schnitzer is an officer and director of EMS.

On October 18, 2005, C/S Solutions filed a "nonsuit" in the county court case "as to all fraud claims against Defendant Energy Maintenance Services Group a.k.a. Energy Measurement Services Company, LP." EMS, Nesler, and Robbins claim they learned about the Fort Bend County district court case on October 19, 2005, and the next day, October 20, they again asked the county court to rule on the pending motion for partial summary judgment and asked for an oral hearing on October 21, 2005. Also on October 20, C/S Solutions filed another nonsuit stating:

> Plaintiff[ ] ... gives notice of non-suit without prejudice ... as to all **FRAUD** claims remaining under the Court's Order as to Separate Trial entered into the record and incorporated by reference as if fully stated herein. Thus, any claims Plaintiff has asserted against any Defendant including Energy Maintenance Services Group LLC, Energy Maintenance Services Group I LLC, EMS Pipeline Services LLC and EMS Measurement Services Company or any other entity named in this lawsuit as Defendant, including Tim Nesler and Art Robbins

individually, all such claims for fraud are hereby non-suited **WITHOUT PREJUDICE** and Plaintiff specifically reserves the right to refile same.

On October 21, 2005, the county court rendered judgment on the verdict that C/S Solutions recover on its breach-of-contract claim $92,432 and attorney's fees from (1) Energy Maintenance Services Group LLC, (2) Energy Maintenance Services Group I, LLC, and (3) EMS Pipeline Services LLC. In its judgment the county court also rendered a take-nothing judgment on the fraud counterclaims.[2] On that same day, the county court also granted the March 11, 2005 motion for partial summary judgment, which disposed of C/S Solutions' claims against EMS other than breach of contract and for all claims against Nesler and Robbins. The judgment contained a Mother Hubbard clause, so the county court on October 21 rendered a final judgment.

C/S Solutions filed a postjudgment motion asking the county court to recognize the "previously filed non-suits regarding Art Robbins and Tim Nesler and as to its remaining fraud cause of action against Defendant EMS." The county court denied the motion.

On November 17, 2005, EMS, Nesler, Robbins, and Schnitzer filed a motion for summary judgment based on res judicata from the October 21, 2005 county court judgment. The district court signed a final judgment on March 10, 2006 stating, "It is ordered that C/S Solutions, Inc., Greg Young, David Galdamez and Earl Longoria take nothing from the Defendants that they have sued in this case, and said claims are hereby dismissed without prejudice." Although the final judgment

---

**2.** The counterclaims of (1) Energy Maintenance Services Group LLC, (2) Energy Maintenance Services Group I, LLC, and (3) EMS Pipeline Services LLC were previously "non-suited" on March 30, 2005.

does not state it is a summary judgment, the only motion before the district court was the November 17 motion for summary judgment.

Finally, on December 12, 2007, C/S Solutions filed a petition for a writ of mandamus directed at the county court judge, seeking to force the judge to recognize the nonsuits and set aside the October 21, 2005 order granting the March 11, 2005 motion for partial summary judgment.

### Discussion

#### *The county court at law case*

In the county court at law case (trial court number 818096; appellate case number 01–05–00746–CV), C/S Solutions brings seven issues: (1) the county court erred in not recognizing the nonsuits; (2) the county court had no jurisdiction to render the summary judgment as the parties and claims were no longer before the court; (3) there was inadequate notice of the summary-judgment hearing; (4) the county court erred by considering the summary-judgment motion on an emergency basis and by ordering C/S Solutions not to respond to the motion for summary judgment; (5) the summary-judgment evidence was defective; (6) fact issues exist that preclude summary judgment; and (7) the "final judgment" order conflicts with the summary-judgment order.

#### *1. Nonsuit*

■ In issue one, C/S Solutions claims that it had an absolute right (1) to nonsuit all the fraud claims and (2) to nonsuit Nesler and Robbins. C/S Solutions there-fore argues that the county court's refusal to recognize those nonsuits resulted in the erroneous rendition of summary judgment. Addressing this issue requires that we carefully distinguish between (1) the use of the term "nonsuit" as a generic means of describing a dismissal of parties and/or claims and (2) a true nonsuit under Texas Rule of Civil Procedure 162.[3]

Our analysis starts with the relevant rules:

#### Rule 162. Dismissal or Non-suit

At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes. Notice of the dismissal or non-suit shall be served in accordance with Rule 21a on any party who has answered or has been served with process without necessity of court order.

Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all costs taxed by the clerk. A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court. Any dismissal pursuant to this rule which terminates the case shall authorize the clerk to tax court costs against dismissing party unless otherwise ordered by the court.

Tex.R. Civ. P. 162.[4]

■ Strictly speaking, a Rule 162 nonsuit applies to a dismissal of the *entire*

---

3. A *nonsuit* is generally defined as "[a] plaintiff's voluntary dismissal of a case or of a defendant, without a decision on the merits." Black's Law Dictionary 1081 (7th ed.1999). *See* Restatement (Second) of Judgments § 20(1)(b) & cmt. f (1982) (discussing effect of voluntary nonsuit).

4. Nonsuits were originally governed by statute, beginning in 1846:

Sec. 99. Be it further enacted, That no plaintiff shall be permitted to suffer a nonsuit on trial, after the jury have retired from the bar.

This was amended in 1853:

Sec. 99. No plaintiff shall be permitted to suffer a nonsuit after the jury retire from the bar, but after the argument of a cause, and before the jury retires, the Judge may deliver a charge to them on the law of the case. . . .

The nonsuit statutes became part of the Revised Statutes:

1879 Revised Statutes article 1301

Art. 1301. At any time before the jury have retired the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief; when the case is tried by the judge such non-suit may be taken at any time before the decision is announced.

1895 Revised Statutes article 1301

Art. 1301. [1301] At any time before the jury have retired the plaintiff may take a nonsuit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief; when the case is tried by the judge such nonsuit may be taken at any time before the decision is announced.

1911 Revised Statutes article 1955

Art.1955. [1301] [1301] **Nonsuit may be taken, when.**—At any time before the jury have retired, the plaintiff may take a nonsuit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief; when the case is tried by the judge such nonsuit may be taken at any time before the decision is announced.

1925 Revised Statutes article 2182

Art. 2182. [1955] [1301] [1301] **Nonsuit.**—At any time before the jury has retired, the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief. When the case is tried by the judge, such non-suit may be taken at any time before the decision is announced.

Act approved May 13, 1846, 1st Leg., R.S., § 99, 1846 Tex. Gen. Laws 363, 390, *reprinted in* 2 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 1669, 1696 (Austin, Gammel Book Co. 1898), *amended by* Act approved Feb. 5, 1853, 4th Leg., 2d C.S., § 1, sec. 99, 1853 Tex. Gen. Laws 19, 19, *reprinted in* 3 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 1303, 1303 (Austin, Gammel Book Co. 1898), *repealed and recodified by* Revised Statutes, 16th Leg., R.S., § 1, art. 1301, § 4, 1879 Tex.Rev.Civ. Stat. 2, 206 (recodification), 718 (repealer), *repealed and recodified by* Revised Statutes, 24th Leg., R.S., § 1, art. 1301, § 4, 1895 Tex.Rev.Civ. Stat. 1, 285 (recodification), 1103 (repealer), *repealed and recodified by* Revised Statutes, 32d Leg., R.S., § 1, art. 1955, § 4, 1911 Tex.Rev.Civ. Stat. 2, 432 (recodification), 1719 (repealer), *repealed and recodified by* Revised Statutes, 39th Leg., R.S., § 1, art. 2182, § 2, 1925 Tex.Rev.Civ. Stat. 2, 588 (recodification), 2419 (repealer).

With the adoption of the Texas Rules of Civil Procedure, nonsuits were governed by Rule 164:

Rule 164. NON–SUIT.—At any time before the jury has retired, the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief. When the case is tried by the judge, such non-suit may be taken at any time before the decision is announced.

Tex.R. Civ. P. 164, 136 Tex. 491 (1940). Former Rule 164 was amended in 1975:

**Rule 164. Non–Suit**

Upon the trial of any case at any time before plaintiff has rested his case, i.e., has introduced all of his evidence other than rebuttal evidence, the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief.

Tex.R. Civ. P. 164, 38 TEX. B.J. 825 (1975). In 1983, former Rule 164 was amended once again:

**Rule 164. Non–Suit**

Upon the trial of any case, at any time before plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief. In the event a motion for sanctions is pending, or the party taking the non-suit has been ordered to pay either attorney fees or other costs, or both, as sanctions for failing to comply with court orders and has failed to pay such fees or costs, or both, the non-suit shall have no effect upon the liability for attorney fees, sanctions, or other costs.

Tex.R. Civ. P. 164, 47 TEX. B.J. (TEX.R. CIV. P. SUPP.) 7 (Feb.1984). Former Rule 164 was repealed in 1987, at which time current Rule 162 was adopted. 50 TEX. B.J. 850 (1987). In 1987, the phrase "the plaintiff may take a non-suit" was replaced by "the plaintiff may dismiss a case, or take a non-suit," to clarify that a nonsuit disposed of the "cause of ac-

case. If a plaintiff wishes to dismiss less than all of the parties, Rule 163 also applies:

### Rule 163. Dismissal As To Parties Served, Etc.

When it will not prejudice another party, the plaintiff may dismiss his suit as to one or more of several parties who were served with process, or who have answered, but no such dismissal shall in any case, be allowed as to a principal obligor, except in the cases provided for by statute.

Tex.R. Civ. P. 163.

Rules 162 and 163 allow a plaintiff greater leeway to dismiss a case or dismiss one or more parties to a case than the general rule for amending pleadings:

### Rule 63. Amendments and Responsive Pleadings

Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

Tex.R. Civ. P. 63. A plaintiff can dismiss a party from the lawsuit by filing an amended petition that omits that party, but Rules 162 and 163 allow the plaintiff to nonsuit a party within seven days of trial without leave of court.

Rules 162 and 163 do not authorize a plaintiff to dismiss some, but not all, claims against a defendant.[5] Rule 63, however, allows a plaintiff to file an amended pleading that omits a claim, and Rule 165 discusses a claim that is abandoned:

### Rule 165. ABANDONMENT.—A

party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried.

Tex.R. Civ. P. 165.

Based on these rules, treatises have drawn a distinction between a pure Rule 162 nonsuit, which voluntarily dismisses the entire case, and a voluntary dismissal that abandons the case as to certain parties and/or claims. *See* 5 Roy W. McDonald & Elaine A. Carlson, Texas Civil Practice § 27.43 (1999); 1 Tex. Jur.3d *Actions* §§ 248, 267, 271 (2004). This distinction has no practical effect when a plaintiff files a written "nonsuit" that abandons the case as to certain claims so long as the written "nonsuit" does not run afoul of the time restrictions in Rule 63.[6] Under our liberal pleading rules, the

---

tion." *See* Tex.R. Civ. P. 162 cmt. In the context of the 1987 amendment, we interpret the comment's use of "cause of action" to mean the entire lawsuit, rather than a claim. *See* Black's Law Dictionary 214 (7th ed.1999) (defining "cause of action").

5. Dismissing *all* claims against a single defendant has the legal effect of dismissing that defendant as a party.

6. An example from this Court is *Mainland Savings Ass'n v. Wilson,* in which a claim to one of three promissory notes was "nonsuited" on February 25, 1976, more than seven days before the March 8, 1976 summary-judgment submission. 545 S.W.2d 491, 492–93 (Tex.Civ.App.-Houston [1st Dist.] 1976, no writ) ("At the time the plaintiff filed its motion for non-suit it was not precluded from amending its pleading.... Nor was plaintiff then prohibited under Rule 164 T.R.C.P. from

document is in substance an amended pleading voluntarily dismissing the claims, notwithstanding the fact that the word "nonsuit" appears. *See* TEX.R. CIV. P. 71 (misnomer of pleadings); *State Bar v. Heard,* 603 S.W.2d 829, 833 & n. 5 (Tex. 1980) ("We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it."). Similarly, the distinction between a pure Rule 162 nonsuit and a voluntary dismissal that abandons the case as to certain parties has no practical effect unless a plaintiff "nonsuits" those parties in a situation in which another party is prejudiced under Rule 163.[7]

■ Here, C/S Solutions claims it had an absolute right to nonsuit all the fraud claims and to nonsuit Nesler and Robbins. *See, e.g., BHP Petroleum Co. v. Millard,* 800 S.W.2d 838, 840–41 (Tex.1990) (discussing plaintiff's right to nonsuit). Were C/S Solutions correct, the trial court's summary judgment was erroneous. However, for the reasons discussed above, C/S Solutions did not have an absolute right to nonsuit.

First, the abandonment of the fraud claims is not governed by Rule 162. *See Messner v. State Farm County Mut. Ins. Co.,* 972 S.W.2d 774, 779 (Tex.App.-Corpus Christi 1998, no pet.). C/S Solutions was in substance amending its pleadings, something for which it needed leave of court under Rule 63 because the summary-judgment hearing had already been held. *See Goswami v. Metro. Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex.1988) (applying Rule 63 to summary-judgment proceedings). The county court refused to recog-

nize the "nonsuits," so we cannot presume the court granted leave to amend. *See id.*

Second, the dismissal of Nesler and Robbins is governed by Rule 163, which conditions a plaintiff's dismissal of less than all defendants on that dismissal not prejudicing another party. The county court refused to recognize the "nonsuits" as to Nesler and Robbins, and C/S Solutions has not argued in the trial court or on appeal that the trial court abused its discretion under Rule 163. Instead, C/S Solutions has treated its dismissal of Nesler and Robbins as a pure Rule 162 nonsuit.

We overrule issue one.

### 2. Jurisdiction to render summary judgment

In issue two, C/S Solutions claims the county court had no jurisdiction to render the summary judgment as the parties and claims were no longer before the court. Because we have already determined that the "nonsuits" were ineffective, we hold the county court had jurisdiction to render the summary judgment.

We overrule issue two.

### 3. Inadequate notice of reconsideration of summary judgment

■ In issue three, C/S Solutions claims that it did not receive adequate notice of the October 21, 2005 summary-judgment hearing, in violation of Texas Rules of Civil Procedure 21 and 166a(c), the due course of law provisions of Texas Constitution article I, section 19, and the Due Process Clause of the Fourteenth Amendment. In essence, C/S Solutions argues that the March 11, 2005 partial motion for sum-

---

abandoning all or any portion of the causes of action which it asserted against the defendant.").

7. From a practical standpoint, the distinction between a pure Rule 162 nonsuit and a voluntary partial dismissal is largely academic, because it is a rare situation in which a defendant is harmed by such action.

mary judgment—which was submitted on April 11, 2005 at a hearing and denied, but a week later that ruling was "voided"—was no longer a live motion under submission, but was instead a "Ghost" motion. C/S Solutions continues by then arguing it had no idea what EMS, Nesler, and Robbins were asking the county court to reconsider.

The March 11, 2005 motion for partial summary judgment was a live, submitted motion. The hearing required by Texas Rule of Civil Procedure 166a(c) occurred on April 11, 2005. The record does not show that any new summary-judgment evidence or briefing was filed. Yet C/S Solutions's lawyer, who attended the hearing, claims

> [he] had no way of knowing what summary judgment motion, real or imaginary, was actually being discussed. When the trial court actually signed Appellees' proposed order, Appellant's counsel was stunned.... Thus, Appellant was at a loss to understand what Appellees were noticing on Oct. 20th and did not fully discern it until after the hearing. In the end, instead of another "Ghost" motion, Appellees resurrected a "Phoenix." It was impossible for Appellant to know what motion the trial court was going to consider on Oct. 21st from the Oct. 20th notice of hearing.

Nowhere in C/S Solutions's trial or appellate arguments, however, is there an allegation that any new motions, pleadings, or evidence were filed or otherwise presented or argued to the county court since the original submission of the motion. Furthermore, C/S Solutions does not allege that anyone at (or before) the October 21 hearing refused to explain what summary-judgment motion was under consideration or otherwise mislead C/S Solutions.

It is not uncommon for motions for summary judgment to be submitted and pend for long periods of time in the trial court. *See* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS: PRACTICE, PROCEDURE AND REVIEW § 7.04 (3d ed.2007). And there is generally no procedure by which litigants can compel the trial court to rule on a pending motion for summary judgment. *Id.* The county court could have simply ruled without a hearing. It is harmless error at worst for the trial court to rule on the submitted motion for partial summary judgment at a postsubmission hearing at which C/S Solutions's lawyer was present, nothing new was filed or argued, and no substantive argument is made on appeal regarding harm.

We overrule issue three.

*4. Emergency summary-judgment hearing and order that C/S Solutions not respond*

In issue four, C/S Solutions claims the county court

> erred by holding an "Emergency" summary judgment hearing and erred by ordering Appellant not to file any response to any summary judgment. The trial court also erred and violated Appellant's Due Process and Open Court's rights by ordering Appellant not to respond to any summary judgment motion and by considering Appellees' motion for summary judgment with less than 24 hours notice.

We have discussed the timing of the October 21 summary-judgment hearing above. C/S Solutions neither points to any place in the record where the county court ordered it not to respond, nor does it provide any substantive briefing on this issue. *See Harris County Mun. Until. Dist. No. 48 v. Mitchell,* 915 S.W.2d 859, 866 & n. 15 (Tex.App.-Houston 1995, writ denied) (discussing failure to adequately brief).

We overrule issue four.

### 5. Defective summary-judgment evidence

In issue five, C/S Solutions claims the county court erred in rendering partial summary judgment because Nesler did not sign his affidavit, which was attached to the March 11, 2005 summary-judgment evidence.[8] C/S Solutions's argument on this issue consists of a general discussion of affidavits and summary-judgment evidence. Assuming Nesler's affidavit was not competent summary-judgment evidence, C/S Solutions does not explain why the county court was precluded from rendering partial summary judgment. We decline to speculate what that argument could be.

We overrule issue five.

### 6. Fact issues exist that preclude summary judgment

In issue six, C/S Solutions makes the following argument:

> In addition, Appellant's Response demonstrates the existence of fact issues to preclude summary judgment even if Nesler's affidavit was valid. CR 184–286. Thus, the trial court's entry of summary judgment was error.

We overrule this issue following our rationale in *Harris County Municipal Utility District No. 48 v. Mitchell*, 915 S.W.2d at 866 & n. 15 (discussing failure to adequately brief).

### 7. Conflict between the "final judgment" and summary-judgment orders

■ C/S Solutions's issue seven is:

The trial court erred by signing a final judgment disposing of all matters and specifically stating all relief not granted

is denied and then taking up and entering Appellees' summary judgment.

We can find no argument in the appellant's brief on this issue. The appellees' brief responds that even if the "final judgment" was signed before the partial summary judgment, the county court had plenary power to modify its own judgment. We agree. In its reply brief, C/S Solutions concedes, "This may be true," but then reiterates its nonsuit and lack-of-proper-notice arguments. Issue seven is overruled.

■ We affirm the county court at law's judgment (trial court number 818096; appellate case number 01–05–00746–CV). We would normally award to EMS, Nesler, and Robbins all appellate costs, i.e., tax costs against C/S Solutions. *See* TEX. R.APP. P. 43.4. The reporter's record—requested by EMS, Nesler, and Robbins—was, however, unnecessary to the disposition of the appeal.[9] Accordingly, we tax the cost of the reporter's record against EMS, Nesler, and Robbins. *Id.* We award to EMS, Nesler, and Robbins all other appellate costs. *Id.* Finally, we render judgment that C/S Solutions recover against the cash deposit in lieu of a supersedeas bond that Energy Maintenance Services Group LLC, Energy Maintenance Services Group I, LLC, and EMS Pipeline Services LLC have deposited with the county clerk for the portion of the county court's judgment awarding C/S Solutions $92,432 in breach-of-contract damages and attorney's fees. *See* TEX.R.APP. P. 43.5.

### The district court case

In the district court case (trial court number 05–CV–145487; appellate case number 01–07–00168–CV), C/S Solutions

---

8. A sworn and signed affidavit from Nesler was filed on April 5, 2005.

9. The reporter's fee is $19,966.00. Furthermore, the reporter's record was not filed until April 30, 2008, resulting in a delay in submitting the appeal of two years and seven months.

brings six issues: (1) the district court erred in dismissing based on res judicata; (2) Civil Practice and Remedies Code section 31.004 precluded use of the county-court judgment as res judicata; (3) the county-court judgment was not final and therefore could not provide the basis for a res-judicata summary-judgment dismissal in district court; (4) the district court erred in dismissing, rather than abating; (5) the district court violated the open-courts and due-course-of law provisions of the Texas Constitution, as well as the Due Process Clause; and (6) the district court erred in not stating the grounds for its dismissal.

The relevant portion of the district court's final judgment follows: "It is Ordered that C/S Solutions, Inc., Gregg Young, David Galdamez and Earl Longoria take nothing from the Defendants that have sued in this case, and said claims are hereby dismissed without prejudice."[10] The only request pending before the district court to dispose of the case was EMS, Nesler, Robbins, and Schnitzer's motion for summary judgment based on the alleged res judicata effect of the county-court judgment for EMS, Nesler, and Robbins. We presume the district court's judgment was rendered pursuant to the motion for summary judgment, as it would have been error to dismiss sua sponte absent lack of jurisdiction.

In issue two, C/S Solutions, Young, Galdamez, and Longoria claim the trial court could not render summary judgment based on the res judicata effect of the county-court judgment because Civil Practice and Remedies Code section 31.004(a) provides, "A judgment or a determination of fact or law in a proceeding in a lower trial court is not res judicata and is not a basis for estoppel by judgment in a proceeding in a district court, except that a judgment rendered in a lower trial court is binding on the parties thereto as to recovery or denial of recovery."[11] See Tex. Civ. Prac. & Rem. Code Ann. § 31.004(a) (Vernon 2008). Civil Practice and Remedies Code section 31.004(c) defines "lower trial court" to be "a small claims court, a justice of the peace court, a county court, or a statutory county court." Tex. Civ. Prac. & Rem.Code Ann. § 31.004(c) (Vernon 2008).

 This statute modifies the common law so that res judicata bars only those claims that were actually litigated in the limited-jurisdiction court. See Webb v. Persyn, 866 S.W.2d 106, 107 (Tex.App.-San Antonio 1993, no writ). The plain purpose of the statute is to narrow the preclusive effect of judgments from courts of limited jurisdiction. Id. If a litigant chooses to litigate one or more issues in county court, the judgment will bar further litigation of the claim for relief actually tried. Id. But the judgment will not preclude any other claims that could have been joined and tried, but were not.[12] Id.

 Young, Galdamez, Longoria, and Schnitzer are not parties to the county-

---

**10.** We note that the district court's judgment, which renders a judgment on the merits that C/S Solutions, Young, Galdamez and Longoria take nothing *and* dismisses the case without prejudice, is internally contradictory.

**11.** The statute uses the term "res judicata" in the broad sense, referring to both claim and issue preclusion. *See generally* Restatement (Second) of Judgments ch. 3 introductory note (1982) (defining "res judicata" as including

concepts of merger, bar, and issue preclusion).

**12.** The policy reasons for limiting the preclusive effect of judgments of statutory county court with broad subject-matter jurisdiction is something for the legislature to consider. It is rare, however, for parties and issues not litigated in a statutory county court with broad subject-matter jurisdiction to later be litigated in district court, because of the economics of litigation and the running of stat-

court judgment.[13] At a minimum, the summary judgment is erroneous for disposing of those parties. We therefore sustain issue two. Because our ruling on this issue renders the other issues moot, we do not reach them.

We reverse the district court's judgment and remand the case to the district court for further proceedings (trial court number 05–CV–145487; appellate case number 01–07–00168–CV).

### The mandamus proceeding

In appellate case number 01–07–01054–CV, C/S Solutions asks this Court to issue a writ of mandamus to compel Judge Block, the former county-court judge to sign an order acknowledging C/S Solutions's nonsuits and to vacate the partial summary judgment.[14] In light of our disposition of appellate case number 01–05–01020–CV, we dismiss as moot the petition for want of jurisdiction.

### Conclusion

We affirm the county court at law's judgment, we reverse the district court's judgment and remand the case to the district court for further proceedings, and we dismiss the petition for a writ of mandamus as moot.

---

utes of limitations. *See generally* RESTATEMENT (SECOND) OF JUDGMENTS § 24 & cmt. g, § 26 & cmt. c (1982) (*Restatement* approach to this issue).

**13.** We need not consider whether the parties to the district-court case who were not parties to the county-court case were in privity with a party bound by the county-court judgment, because the preclusive effect of a prior adjudication on a nonparty, *i.e.*, privity, is governed by the rules of res judicata, which do not apply under Civil Practice and Remedies Code section 31.004(a). *See generally* RESTATEMENT (SECOND) OF JUDGMENTS ch. 1 scope note, ch. 4 introductory note (1982) (defining concept of "privity").

**14.** We previously denied a similar petition, due to the pendency of the appeal in appellate case number 01–05–01020–CV. *See In re C/S Solutions, Inc.*, No. 01–06–00040–CV, 2006 WL 648791 (Tex.App.-Houston [1st Dist.] Mar. 14, 2006, orig. proceeding). We also note that were we not dismissing the petition, we would have to abate appellate case number 01–07–01054–CV to allow the current county judge to reconsider Judge Block's decision. *See* TEX.R.APP. P. 7.2(b).