

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00294-CV
_____

JANIE MAE PHILLIPS PRICE, Appellant

V.

HPGM, LLC, Appellee

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2019-005935-3

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Janie Mae Phillips Price challenges (1) the merits of the summary judgment entered against her and (2) the trial court's award of attorney's fees to Appellee HPGM, LLC.[1]   But Price's attacks on the summary judgment rely on stricken pleadings while ignoring other grounds supporting the judgment—such as her failure to respond to many of the no-evidence challenges to her claims and affirmative defenses.  And as for the fee award, Price's scattershot complaints dispute the trial court's credibility assessments but do not show an abuse of discretion. Accordingly, we will affirm.

## I.  Background

In 2016, Price hired two law firms to represent her in litigation.  Then, in 2018, she signed a new contract (the Contract) agreeing to convey 25% of certain income-generating property to the firms as compensation for their representation of her.  The firms assigned their 25% interest to HPGM.

---

[1]Although Appellees Mark A. Haney; W. Kelly Puls; Thomas M. Michel; Ross P. Griffith; and Griffith, Jay & Michel, LLP (collectively, the Attorneys) were parties to the judgment, Price does not challenge the portions of the judgment dismissing her claims against those parties.  Price disputes this in her reply brief, alleging that "[a]ll parties to the case below are also parties to this appeal."  But in that very same brief, she omits the Attorneys from the case style, omits the Attorneys from the restated identification of parties and counsel, *see* Tex. R. App. P. 38.1(a), and directs her arguments at a singular appellee—HPGM.

## A.     Litigation

Soon, disputes arose regarding the jointly owned property.  So, in 2019, HPGM sued Price for, among other things, a declaratory judgment regarding the parties' rights to the property.[2]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004.  Price answered by timely pleading two affirmative defenses—duress and fraud, *see* Tex. R. Civ. P. 94—and by counterclaiming for, among other things, breach of fiduciary duty and violations of the Deceptive Trade Practices Act (DTPA).[3]

The case continued for more than five years.[4]  During that time, the trial court appointed a receiver, the parties petitioned for two writs of mandamus, Price filed for bankruptcy, and HPGM's bankruptcy counsel obtained relief from the bankruptcy court's automatic stay to allow the declaratory judgment claim to move forward.[5]  *See*

---

[2]HPGM's live petition is not included in the appellate record.  Upon inquiry, the trial court clerk indicated that she had prepared a supplemental record containing this and other documents but that it has not been paid for.  *See* Tex. R. App. P. 35.3(a)(2) (providing for clerk's filing of record "if . . . the party responsible for paying . . . has paid the clerk's fee, has made satisfactory arrangements with the clerk to pay the fee, or is entitled to appeal without paying the fee").

[3]Price added the Attorneys as third-party defendants, and she asserted the same claims against them as she did against HPGM.  HPGM and the Attorneys both responded that Price's claims were barred by the statute of limitations.

[4]HPGM's trial counsel later testified that, at one point, Price had agreed to settle with HPGM, but she later pulled out of the settlement.

[5]Most, if not all, of the receivership-related filings are missing from the appellate record.  This includes HPGM's application for a receiver and the trial court's order appointing a receiver.  Additionally, the order granting relief from the automatic stay is not included in the appellate record.  *See supra* note 2.

*generally In re Price*, No. 02-24-00093-CV, 2024 WL 4510189, at *1 (Tex. App.—Fort Worth Oct. 17, 2024, orig. proceeding) (per curiam) (mem. op.) (denying Price's mandamus petition); *In re HPGM, LLC*, 629 S.W.3d 418, 420–33 (Tex. App.—Texarkana 2020, orig. proceeding) (conditionally granting HPGM's mandamus petition).

## B.    Summary Judgment

Finally, in 2024—after discovery had closed and the deadline for amended pleadings had passed, *see* Tex. R. Civ. P. 190.4—HPGM moved for summary judgment.  The hybrid summary judgment motion was wide-ranging; HPGM sought not only (1) traditional summary judgment on its own declaratory claim but also (2) traditional and no-evidence summary judgment on every element of Price's claims and affirmative defenses.[6]

Price responded by attempting to amend her pleadings without leave.  *Cf.* Tex. R. Civ. P. 63 (allowing parties to amend pleadings "provided, that any pleadings . . . offered for filing . . . after such time as may be ordered by the judge under Rule 166[] shall be filed only after leave of the judge is obtained"), 166 (authorizing trial court to direct parties to "consider . . . [a] discovery schedule" and providing for pretrial order "that recites . . . the amendments allowed to the pleadings[ and] the time within which same may be filed"), 190.4(b) (providing for

---

[6]The Attorneys joined HPGM in its summary judgment motion, and they also sought summary judgment on their statute of limitations defense.

discovery control plan to address discovery and "matters listed in Rule 166" and to specify "deadlines for . . . amending or supplementing pleadings"). In her amended petition, she dropped all of her originally pleaded claims other than breach of fiduciary duty; she added a new cause of action against HPGM; and she added four new affirmative defenses, including unconscionability.[7] Then, relying on her new pleadings, she responded to HPGM's summary judgment motion.

Price's summary judgment response discussed only[8] (1) her claim for breach of fiduciary duty, (2) her newly pleaded cause of action against HPGM, and (3) her newly pleaded unconscionability defense.[9] The response did not address Price's originally pleaded affirmative defenses of duress and fraud, nor did it address her originally pleaded DTPA claim.

The limited nature of Price's summary judgment response proved fatal. Because Price's amended petition was untimely, the trial court struck it and declined

---

[7]Price also pleaded the discovery rule exception to HPGM's and the Attorneys' statute of limitations defense. *See supra* note 3. And she further pleaded breach of fiduciary duty as an affirmative defense, though her subsequent filings revealed that this was part of her unconscionability defense.

[8]Price's summary judgment response also addressed her newly pleaded reliance on the discovery rule as an exception to the statute of limitations defense. *See supra* notes 6–7.

[9]HPGM argues that, even for the claims and defenses that Price discussed in her summary judgment response, her response was inadequate to satisfy her no-evidence burden because she failed to separately address each challenged element. We need not resolve this issue to dispose of the appeal. *See* Tex. R. App. P. 47.1.

to consider her newly pleaded claims, affirmative defenses, and legal theories. Thus, the trial court had before it, on the one hand, HPGM's wide-ranging summary judgment motion—which sought judgment on HPGM's declaratory claim and attacked all of Price's originally pleaded claims and affirmative defenses—and, on the other hand, Price's now-inadequate summary judgment response—which discussed only her original breach of fiduciary duty claim. On this record, the trial court granted HPGM's summary judgment motion without specifying a basis for its ruling. It declared the Contract valid and enforceable.

## C. Attorney's Fees

The trial court left open the question of HPGM's attorney's fees, though, and it later held an evidentiary hearing on the matter. *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (authorizing a trial court, in a declaratory judgment proceeding, to "award costs and reasonable and necessary attorney's fees as are equitable and just").

At the hearing, HPGM provided copies of detailed billing invoices from both its trial counsel and its bankruptcy counsel. Its trial counsel testified to his work, explaining his background and experience, the rates he charged HPGM, the standard rates for similar cases in the county, the ins and outs of the services he had performed on the case, the total hours worked by his firm, and the expenses that he had voluntarily omitted from his billing invoices to "be conservative" in his fee request. Additionally, as relevant to this appeal, HPGM's trial counsel discussed (1) his hourly

6

billing arrangement with HPGM, (2) his receivership-related fees, and (3) HPGM's bankruptcy counsel's fees.

Regarding his billing arrangement, HPGM's trial counsel stated that he had billed HPGM by the hour, and he testified to his hourly rate. His firm's representation agreement with HPGM—which was admitted into evidence—confirmed this hourly billing arrangement as well. But because HPGM's trial counsel conceded that he had not yet been paid, Price questioned whether there was "any side agreement, any agreement not in writing between [the trial counsel] and HPGM regarding [attorney's] fees." HPGM's trial counsel denied such an arrangement—saying "[n]o," none existed—and he reiterated that he expected to be paid based on his hourly rate.

As for the receivership, Price questioned why HPGM's trial counsel had not segregated his receivership-related attorney's fees from those related to the declaratory judgment action, implying by her questions that HPGM's request for a receivership had been independent of and distinct from its declaratory judgment claim. But HPGM's trial counsel disagreed that the two pursuits were distinct. He testified that the receivership had been "part of the proceedings in this court in order to preserve the assets . . . that would be the subject of the determination for the declaratory judgment action," so the work he had performed on the receivership "advance[d] the fee[-]recoverable declaratory judgment claim." Price did not offer any refuting evidence.

In addition to discussing his receivership-related fees, HPGM's trial counsel also discussed the fees attributable to HPGM's bankruptcy counsel. The trial counsel explained why HPGM's hiring of bankruptcy counsel had been necessary, how the bankruptcy counsel's work had advanced HPGM's declaratory judgment claim,[10] and how he had determined that the bankruptcy counsel's hourly rate was reasonable.[11] He testified that he had often assisted the bankruptcy counsel and had "coordinated [with him] on what services were being performed" to minimize HPGM's total fees. And he confirmed that he had reviewed the bankruptcy counsel's bills both "for their accuracy and also to make sure that [the trial counsel] was up to speed on the work that was being done."

In the end, HPGM requested approximately $300,000 to cover nearly the 900 hours of work performed by its trial and bankruptcy counsel, and it further requested

---

[10]HPGM's trial counsel testified that "there was concern what would happen [to HPGM's declaratory claim] if [it] stayed in bankruptcy," so "it was necessary to have representation in bankruptcy court to preserve and protect [HPGM's interest]." He further explained that, "for [HPGM] to continue with the state court cause of action[,] . . . it was necessary to get the [bankruptcy court's automatic] stay lifted."

[11]HPGM's trial counsel testified that he had consulted not only the bankruptcy counsel himself but also another bankruptcy attorney who had "represent[ed] creditors in bankruptcy court" and was "familiar with the rates," including the rates "specifically in the federal district where [Price's] bankruptcy was filed." According to HPGM's trial counsel, the hourly rate charged by the bankruptcy counsel was approximately $200 to $400 less than the rate charged in the same locality by other bankruptcy attorneys.

contingent appellate attorney's fees. The trial court awarded the amounts requested and consolidated its rulings into a final judgment. *See id.*

## II. Discussion

In two issues, Price attacks (1) the merits of the summary judgment and (2) the award of attorney's fees.[12]

## A.    Summary Judgment

Price first challenges the summary judgment's merits. From what we can gather,[13] she appears to contend that (1) she thwarted HPGM's declaratory claim by raising a fact issue on her affirmative defenses of unconscionability, duress, and fraud;

---

[12]Price does not challenge the award of appellate fees.

[13]It is not entirely clear what aspects of the trial court's summary judgment Price seeks to challenge. She broadly asserts that "[q]uestions of fact exist[ed] to prevent . . . [the] Summary Judgment." But HPGM's summary judgment motion put all elements of Price's claims and affirmative defenses in play, as well as all elements of HPGM's declaratory claim. Yet, Price does not list any of these elements, nor does she identify which element, claim, or defense she is addressing at any given time. Further adding to the confusion, she repeatedly references her late-pleaded claims and defenses without acknowledging that the trial court struck them. Such murkiness leaves us—and HPGM—to guess regarding her intended complaint.

Nonetheless, because we strive to reach the merits of an appellant's brief whenever reasonably possible, we attempt to do so. *Borusan Mannesmann Pipe US, Inc. v. Hunting Energy Servs., LLC*, 716 S.W.3d 572, 575–76 (Tex. 2025) (urging courts of appeals to "reach the merits of an appeal whenever reasonably possible").

and (2) she avoided no-evidence summary judgment on her DTPA and breach of fiduciary duty claims by raising a fact issue on each.[14]

For purposes of appellate review, these arguments boil down to the same fundamental question: Can Price demonstrate that she created a genuine issue of material fact on each of her relied-upon claims and affirmative defenses?[15] *See Fossil Grp.*, 691 S.W.3d at 882 ("Where, as here, a trial court grants a motion for summary judgment that raises traditional and no-evidence grounds and both parties present evidence, the ultimate issue is whether the nonmovant raised a fact issue to preclude summary judgment."); *see also Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023) ("[A] properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion."); *Brownlee v. Brownlee*, 665 S.W.2d

---

[14]Although Price dropped her DTPA claim from her stricken amended petition, neither party asserts that the claim was no longer before the trial court or that the trial court lacked jurisdiction to resolve the DTPA claim on its merits. *See C/S Sols., Inc. v. Energy Maint. Servs. Grp. LLC*, 274 S.W.3d 299, 304–07 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (distinguishing between a "true nonsuit" dismissing all claims under Rule 162 and the abandonment of less than all claims in an amended pleading under Rule 63; concluding that plaintiff's purported nonsuit of one claim after summary judgment hearing was "in substance [an] amending [of] its pleadings, something for which it needed leave of court"; and holding that, because leave was not granted, trial court had jurisdiction to grant summary judgment on claim's merits).

[15]We review this question de novo. *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 882 (Tex. 2024); *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022); *Grady v. Nationstar Mortg., LLC*, No. 02-19-00006-CV, 2020 WL 5242418, at *3 (Tex. App.—Fort Worth Sept. 3, 2020, pet. denied) (mem. op.).

111, 112 (Tex. 1984) ("If the party opposing a [traditional] summary judgment relies on an affirmative defense, [s]he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment."); *Anderson v. G & S Auto of Ft. Worth VI, LLC*, No. 02-25-00063-CV, 2025 WL 3039141, at *2 (Tex. App.—Fort Worth Oct. 30, 2025, pet. ref'd) (mem. op.) (same); *see generally* Tex. R. Civ. P. 166a.[16]  For the answer to be "yes"—for Price to demonstrate that she created a genuine issue of material fact that warrants reversal—Price must, at a minimum, (1) show that she responded to HPGM's summary judgment motion by raising and presenting evidence of the relevant relied-upon claim or affirmative defense, *see* Tex. R. Civ. P. 166a(c); *Wal-Mart Stores*, 663 S.W.3d at 576; *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Brownlee*, 665 S.W.2d at 112; and (2) present an appellate challenge to all independent grounds supporting the trial court's ruling on that relied-upon claim or affirmative defense, *see Rosetta Res. Operating*, 645 S.W.3d at 226–27.  Price does neither.

---

[16]While this appeal was pending, the Texas Supreme Court amended Rule 166a. *See* Sup. Ct. of Tex., *Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure*, Misc. Docket No. 26-9012 (Feb. 27, 2026).  But the "amendments apply only to a motion for summary judgment filed on or after March 1, 2026," *id.*, so they are inapplicable here.  All citations to Texas Rule of Civil Procedure 166a in this opinion reference the version applicable to motions for summary judgment filed before March 1, 2026.

### 1. Price's response did not properly raise her unconscionability defense.

First, regarding Price's unconscionability affirmative defense, she asserts that the declaratory judgment was erroneous in light of it. But she fails to acknowledge that the trial court struck her unconscionability defense and refused to consider it for purposes of the summary judgment.[17] Thus, the unconscionability defense was not before the trial court, and Price cannot obtain reversal on that basis.[18] *See Grady*, 2020 WL 5242418, at *4, *6 (rejecting appellant's challenge to summary judgment based on stricken claims and legal theories and noting that, because the trial court struck the late-filed amended petition, the stricken "claims were . . . not before the trial court"); *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 477 (Tex. App.—Houston [1st

---

[17]Price does not challenge the trial court's ruling on HPGM's objections. *See Grady*, 2020 WL 5242418, at *4 (noting that, because appellant did not challenge trial court's striking her pleadings, she waived any complaint regarding the ruling). Indeed, her opening brief does not acknowledge the ruling at all. And although she acknowledges the ruling in her reply brief and asserts that "the trial court erred," even then, she does not mention her amended petition's untimeliness or provide any substantive legal analysis of the issue. *See* Tex. R. App. P. 38.9 (reiterating that briefs "are meant to acquaint the court with the issues" and "present argument that will enable the court to decide the case"). Furthermore, even if she had, she could not raise a new issue in her reply brief. *See* Tex. R. App. P. 38.3; *Madhu Lodging Partners, LP v. AmGuard Ins.*, No. 02-23-00379-CV, 2024 WL 2760482, at *2 n.5 (Tex. App.—Fort Worth May 30, 2024, pet. denied) (mem. op.).

[18]Price also argues that the trial court erred by rejecting her legal theory that the discovery rule provided an exception to HPGM's statute of limitations defense. But the discovery rule was one of the new legal theories that the trial court struck and refused to consider. Moreover, the Attorneys—not HPGM—sought summary judgment based on the statute of limitations, and Price does not challenge the portion of the judgment dismissing her claims against the Attorneys.

Dist.] 2018, pet. denied) ("When a trial court strikes an affirmative defense that was previously pleaded by a defendant, the defendant has essentially failed to plead his defense, and it is waived."); *cf. Rhodes v. Interfirst Bank Ft. Worth, N.A.*, 719 S.W.2d 263, 264–65 (Tex. App.—Fort Worth 1986, no writ) (reviewing summary judgment, noting that trial court's striking significant portions of responsive summary judgment evidence was not challenged on appeal, and rejecting appellant's attempt to rely on stricken evidence because "[t]his court cannot consider the stricken material as evidence where the propriety of the motion to strike is not at issue").

### 2. Price's response did not present evidence of her originally pleaded defenses.

Next, Price argues that the declaratory judgment was erroneous in light of her originally pleaded affirmative defenses of duress and fraud. But while these defenses were not stricken, Price did not present evidence of them in her summary judgment response. *See* Tex. R. Civ. P. 166a(c), (i).

In the trial court, Price bore the burden to produce summary judgment evidence of each element of her duress and fraud affirmative defenses—both to avoid HPGM's no-evidence challenges to them and to thwart HPGM's declaratory claim based on them. *See* Tex. R. Civ. P. 166a(c); *Wal-Mart Stores*, 663 S.W.3d at 576; *Brownlee*, 665 S.W.2d at 112; *Anderson*, 2025 WL 3039141, at *2. Yet, her summary judgment response made only cursory reference to duress and did not mention her fraud defense at all. Because Price failed to produce evidence of these defenses in her

13

response, the trial court was required to grant no-evidence summary judgment on them, and we are precluded from considering them as grounds for reversing the traditional summary judgment on HPGM's declaratory claim. Tex. R. Civ. P. 166a(c) (providing that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal"), (i) (stating that the trial court "must" grant a no-evidence motion "unless the respondent produces summary judgment evidence raising a genuine issue of material fact" on each challenged element); *see Grady*, 2020 WL 5242418, at *3 (holding that, "[b]ecause [the appellant] did not raise [her] argument in her summary[ ]judgment response, she failed to preserve this issue for our review, and we cannot consider it on appeal as a ground for reversal").

### 3. Price's response did not present evidence of her DTPA claim.

Price's appellate complaint regarding her DTPA claim fails for the same reason: she did not respond to HPGM's no-evidence challenge to that claim. *See* Tex. R. Civ. P. 166a(c), (i). To the contrary, when Price filed her summary judgment response, she did so in reliance on her later-stricken amended petition, and that petition dropped Price's DTPA claim altogether. Thus, because Price did not respond to HPGM's no-evidence attack on her DTPA claim, the trial court was required to grant HPGM's summary judgment motion on that claim. Tex. R. Civ. P. 166a(i).

14

### 4. Price does not challenge all grounds supporting the judgment on her claims.

Price's appellate complaint regarding her DTPA claim has a second flaw as well: She does not challenge all independent grounds supporting the trial court's summary judgment dismissal of that claim. And the same flaw undermines her challenge to the summary judgment dismissal of her breach of fiduciary duty claim.

HPGM's summary judgment motion listed the elements of Price's claims and asserted that there was no evidence of any of the eleven elements of her DTPA claim and no evidence of any of the four elements of her fiduciary duty claim. The trial court ultimately granted this summary judgment motion without specifying a basis for its ruling. Yet, Price's appeal addresses just some of each claim's elements; she argues that the Contract's fee was illegal or unconscionable under the DTPA and that HPGM owed and breached a fiduciary duty. These arguments are not dispositive, though, because whether or not they have merit, the trial court could still have granted no-evidence summary judgment based on the other elements of Price's DTPA and breach of fiduciary duty claims that Price does not address on appeal. *See generally id.* (authorizing a summary judgment when there is no evidence of "one or more essential elements" of a claim). And when, as here, a "ground on which the judgment could have been based stands unchallenged" on appeal, we "must" affirm— "regardless of the merits of the unchallenged ground[s]." *Madhu Lodging Partners*, 2024 WL 2760482, at *2; *see Rosetta Res. Operating*, 645 S.W.3d at 226–28 (holding court of

appeals erred by reversing summary judgment when appellant did not challenge each ground independently supporting it and reiterating that, "[w]hen a trial court's order granting summary judgment does not specify the grounds on which its order is based, the appealing party must negate each ground upon which the judgment could have been based").

Thus, all of Price's challenges to the summary judgment fail. We overrule her first issue.

## B.    Award of Attorney's Fees

In Price's second and final issue, she contends that the trial court's award of attorney's fees was an abuse of discretion because it lacked sufficient evidentiary support.[19] But apart from this broad allegation, the substance of her argument does not, in fact, take issue with the sufficiency of the evidence.[20] Rather, she argues that

---

[19]To determine the amount of attorney's fees that are reasonable and necessary, "the fact finder's starting point . . . is determining the reasonable hours worked multiplied by a reasonable hourly rate." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). Generally, this requires the party requesting fees to produce evidence of the"(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.*; *see Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

[20]The closest Price comes to disputing the evidence's sufficiency is advancing the conclusory assertion that there was "[n]o substantive explanation . . . [of] the *Arthur Anderson* factors" to support the reasonableness of HPGM's trial counsel's fees. *See Arthur Andersen*, 945 S.W.2d at 818 (listing "[f]actors that a factfinder should consider when determining the reasonableness of a fee"). But Price neither lists the *Arthur Anderson* factors nor provides a substantive explanation of the alleged gaps in

16

(1) the award unjustly forced her to pay for legal maneuvers that favored HPGM; (2) the hourly billing arrangement described by HPGM's trial counsel did not reflect "the actual arrangement"; (3) the fee award improperly compensated HPGM for non-recoverable attorney's fees related to the receivership; and (4) HPGM's trial counsel's testimony was not "competent evidence" of its bankruptcy counsel's fees. These arguments are misguided.

### 1. Price's categorical objection says nothing about the fee award.

Price's first complaint—her objection to being forced to pay for legal maneuvers that favored HPGM—is a categorical objection to fee awards. The very nature of an award of attorney's fees is that one party is forced to pay for the legal maneuvers of her opponent even though, generally, those legal maneuvers led to the party's own defeat. While Price may object to such awards as a matter of principle, the legislature does not; it has authorized an award of "reasonable and necessary attorney's fees as are equitable and just" in a declaratory judgment proceeding. Tex. Civ. Prac. & Rem. Code Ann. § 37.009. Price's criticism of the concept says nothing about the legality or propriety of the specific fee award in this case.

---

HPGM's evidence. And she wholly ignores not only HPGM's detailed invoices showing the "time and labor" expended by its trial counsel but also the trial counsel's description of his "experience . . . and ability," of the "fee customarily charged in the locality," and of the "results obtained." *Id.* (listing as factors the "time and labor required," the "experience . . . and ability of the lawyer," the "fee customarily charged in the locality," and the "results obtained"). We thus construe her complaint regarding the *Arthur Anderson* factors based on the sole factor that she substantively addresses: "whether the [trial counsel's] fee [wa]s fixed or contingent." *See id.*

17

## 2. The trial court could believe HPGM's evidence of hourly billing.

Second, Price's assertion that the hourly arrangement described by HPGM's trial counsel did not reflect "the actual arrangement" is, at its core, a disagreement with the trial court's credibility assessment.

HPGM's representation agreement with its trial counsel reflected an hourly billing arrangement, its invoices showed hourly billing, and its trial counsel denied that there was "any side agreement, any agreement not in writing between [counsel] and HPGM regarding [attorney's] fees." "[T]he factfinder"—here, the trial court—"[wa]s the sole judge of the credibility of witnesses," and it was entitled to believe HPGM's evidence of hourly billing.[21] *Lederer v. Lederer*, No. 14-21-00012-CV, 2022 WL 11551156, at *5–6 (Tex. App.—Houston [14th Dist.] Oct. 20, 2022, no pet.) (mem. op.) (rejecting credibility challenge to declaratory judgment fee award); *see El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763–64 (Tex. 2012) (discussing appellate review of attorney's fees and noting that "[w]e generally accord considerable deference to a trial court's findings" because "[t]he trial court possesses a superior understanding of the case and the factual matters involved").

---

[21]Moreover, "reasonableness and necessity are not dependent solely on the contractual fee arrangement between the prevailing party and its attorney" anyway. *Rohrmoos Venture*, 578 S.W.3d at 498. And Price does not argue that the hourly rate reflected on HPGM's invoices was unreasonable.

**3.    Price has not shown error in the award of receivership fees.**

Price's third argument—her assertion that HPGM's fee award should have segregated and excluded receivership-related fees—is also flawed.

Generally, a party is required to segregate the attorney's fees attributable to fee-recoverable claims from those attributable to non-fee-recoverable claims. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). However, "segregation of fees is not required when discrete legal services advance both recoverable and unrecoverable claims such that they are inextricably intertwined." *Maciejack v. City of Oak Point*, No. 02-23-00248-CV, 2024 WL 3195851, at *12 (Tex. App.—Fort Worth June 27, 2024, pet. denied) (mem. op.) (internal quotation marks omitted) (reviewing declaratory judgment fee award and affirming award of unsegregated fees); *see Chapa*, 212 S.W.3d at 312–13 (clarifying that while "the need to segregate fees is a question of law, . . . the extent to which certain claims can . . . be segregated . . . [is] a mixed question of law and fact for the [factfinder]").

At the hearing on attorney's fees, HPGM's trial counsel explained why he considered the receivership to have "advance[d] the fee[-]recoverable declaratory judgment claim." He testified that "Mrs. Price was taking money [from the jointly owned property] and [HPGM] had no way to tell where it was going, and that was the money that was . . . the basis of this litigation[,] . . . so [HPGM] had to spend time getting a receiver appointed so that all that money could be accounted for and divided up pursuant to the [Contract]." Price did not offer any controverting evidence. *See*

*Fortenberry v. Cavanaugh*, No. 03-07-00310-CV, 2008 WL 4997568, at \*12–13 (Tex. App.—Austin Nov. 26, 2008, pet. denied) (mem. op.) (holding trial court could have concluded that appellees met their burden to show that receivership was intertwined with declaratory judgment when attorney testified as much and appellants offered no controverting testimony).

Nor has Price, on appeal, pointed to anything in the record to support her argument regarding the need for segregation. Indeed, Price has not even taken the steps necessary to include the potentially relevant pleadings in the appellate record. *See Burgin v. Burgin*, No. 02-24-00504-CV, 2025 WL 2552341, at \*4 (Tex. App.—Fort Worth Sept. 4, 2025, no pet.) (mem. op.) ("It is the appellant's burden to bring forward a record showing the error alleged."). Almost all of the receivership-related filings are missing, including HPGM's application for a receiver and the trial court's order appointing one.[22] *See* Tex. R. App. P. 35.3(a)(2) (recognizing trial court clerk's responsibility to file record "if . . . the party responsible for paying for the preparation of the clerk's record has paid the clerk's fee, has made satisfactory arrangements . . . to pay the fee, or is entitled to appeal without paying"); *Burgin*, 2025 WL 2552341, at \*4 (holding record inadequate to enable appellate review of evidence supporting fee award when appellant failed to provide a reporter's record). Thus, Price has not

---

[22]Upon inquiry, the trial court clerk indicated that she had prepared a supplemental record but that it had not been paid for. *See* Tex. R. App. P. 35.3(a)(2); *supra* note 2. It is unclear what, if any, receivership-related documents might have been included in the unpaid-for supplemental record.

shown—on the limited appellate record before us—that the trial court abused its discretion by implicitly concluding that the receivership was intertwined with HPGM's declaratory judgment claim and could not be segregated.

### 4. HPGM offered competent evidence of its bankruptcy fees.

Finally, Price characterizes HPGM's evidence as "[in]competent" to prove the reasonableness and necessity of its bankruptcy counsel's fees. But her rationale for using this descriptor is unclear.

The record reflects that HPGM's trial counsel testified to the bankruptcy counsel's hourly rate, the reasonableness of that rate, the work that the bankruptcy counsel had performed, how the trial counsel had been involved in the bankruptcy counsel's work, and how the work related to HPGM's declaratory judgment claim. Price does not explain why she considers this evidence "[in]competent." To the contrary, she expressly declines to "go[] into all of the procedural testimony" behind her appellate complaint, instead dismissively asserting that "the end is that there is no competent proof of the reasonableness or necessity of [the bankruptcy counsel's] bills for the bankruptcy."

To the extent that Price disagrees with the trial court's decision to believe HPGM's trial counsel's testimony regarding the bankruptcy counsel's fees, the trial court was the sole judge of the witness's credibility, and we defer to its credibility assessment. *See El Apple*, 370 S.W.3d at 763–64; *Lederer*, 2022 WL 11551156, at *5–6. To the extent that Price contends that the fees' reasonableness and necessity required

testimony from the fee-charging attorney himself—and that all other witness testimony on the subject was "[in]competent"—she has not cited any case law for that rule, and we decline to adopt it. To the extent that she contends something else, she has not adequately briefed it. *See* Tex. R. App. P. 38.1(i) (requiring an appellant's brief to provide "a clear and concise argument for the contentions made"), 38.9 (noting that "briefs are meant to acquaint the court with the issues in [the] case and to present argument that will enable the court to decide the case"); *Burgin*, 2025 WL 2552341, at *1 n.3 (holding that, to the extent the appellant sought appellate review of issues not fleshed out in the argument portion of her brief, she forfeited those issues due to inadequate briefing); *see also Borusan Mannesmann Pipe*, 716 S.W.3d at 575 (recognizing that "an issue *can* be forfeited or waived" due to inadequate briefing though cautioning that forfeiture is "a last resort").

Thus, all told, Price's attacks on the fee award are unavailing. We overrule her second and final issue.

## III. Conclusion

Having overruled both of Price's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: April 23, 2026

22